Claude A. Hinton, Jr., by Frank S. Blackford, as Trustee of the Bankrupt Estate of Claude A. Hinton, Jr., appeals from a summary judgment entered in favor of defendant First State Bank of Tuscaloosa. Consent judgments against Boyd L. Hobbs and Henry J. Brislin in the same action are not involved in this appeal.
This appeal evolves from a suit filed, on 23 October 1974, by Hinton against Boyd L. Hobbs, Henry J. Brislin, and
 "* * * A through Z, persons, firms or corporations who withheld the truth as to facts pertinent to the transactions herein described, and whose correct names are unknown but will be furnished when ascertained. * * *"
The complaint charged in four counts that the defendants suppressed, and withheld from Hinton, various material facts and made certain material misrepresentations of facts which induced Hinton to loan money to Hobbs or to introduce sums into Hobbs' account at First State Bank of Tuscaloosa.
After filing his action Hinton was adjudicated a bankrupt and a trustee was appointed who became the real party in interest and was substituted as party plaintiff.
On January 26, 1976, Blackford amended the complaint by designating the First State Bank of Tuscaloosa as the party defendant which had previously been referred to as "A" and by striking the remaining fictitious defendants. The amendment withdrew counts two and four, and added to the complaint counts five and six, which alleged that the original defendants, Hobbs and Brislin, had been acting in the line and scope of their authority as the major stockholder of the Bank and President and Chief Executive Officer of the Bank, respectively.
The Bank answered the amended complaint by pleading the statute of limitations as an affirmative defense. *Page 29 
A second amendment was filed by Blackford on October 6, 1976, to add counts seven and eight to the original complaint. In those counts, it was claimed that defendants had negligently induced Hinton to lend money to Hobbs for the benefit and advantage of the Bank; and defendants negligently extended credit to Hobbs and negligently induced Hinton to extend credit to Hobbs and Brislin for the benefit and advantage of the Bank.
On December 1, 1976, the Bank filed its motion for summary judgment. The basis of the motion was that, at the time the original complaint was filed, Hinton knew the name and the identity of the Bank and all the facts which constituted the alleged fraud.
Therefore, the question raised is whether substitution of the Bank for one of the fictitious parties described in the original complaint was appropriate under the facts of this case. We hold it was not and affirm the judgment of the trial court.
This appeal centers on the fictitious parties provision in Rule 9 (h), ARCP.
In brief, Blackford asserts that his compliance with Rule 9 (h), ARCP, permitted the amendment adding the Bank to relate back to the time of the filing of the original complaint (Rule 15 (c), ARCP) because Hinton did not discover the fraud until less than a year before the filing of the amendment. He says, under Tit. 7, § 42, Code, the amendment is therefore timely.
Rule 9 (h), ARCP, is in the spirit of, and closely drawn from Tit. 7, § 136, Code, dealing with fictitious parties. Committee Comments, Rule 9, ARCP. It provides:
 "(H) Fictitious Parties. When a party is ignorant of the name of an opposing party and so alleges in his pleading, the opposing party may be designated by any name, and when his true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name."
Title 7, § 136, and its statutory predecessors were intended primarily for cases in which the name of defendant was unknown; they were emergency statutes and included cases in which neither the name nor the identity of defendant is known, as where the cause of action only is known but the party liable is not, and there is need for immediate seizure of property by attachment or other appropriate writ, or there is urgent need to get service at the same time the identity and name are ascertained. McKelvey-Coats Furniture Co. v. Doe, 240 Ala. 135,198 So. 128 (1940); Roth v. Scruggs, 214 Ala. 32, 106 So. 182
(1925).
Hinton concedes he knew the Bank's name at the time he filed the original complaint; however, this court is urged to adopt a liberal construction of Rule 9 (h). It is argued that the proper interpretation of 9 (h) is to permit the substitution of a named party for a fictitious one and let the amendment doing so relate back even if, at the time of the filing of the original complaint, the true name of the defendant was known but the plaintiff lacked knowledge of facts giving him a cause of action against that defendant. Cases of the California Supreme Court and District Courts of Appeals are cited in support of this argument since California's fictitious parties statute is almost identical to Rule 9 (h). In this case we cannot construe 9 (h) to find that Hinton was ignorant of facts giving him a cause of action against the Bank.
A careful review of the record demonstrates that under the most liberal of interpretations, Hinton could not be considered "ignorant" within the meaning of Rule 9 (h), ARCP. The face of the original complaint is illustrative of this:
"COUNT ONE
 "1. On, to-wit, July 25, 1973, defendant Boyd L. Hobbs was the major stockholder of First State Bank of Tuscaloosa, an Alabama corporation, and defendant Henry J. Brislin was the President of said Bank and also a stockholder.
 "2. On or prior to said date, all defendants, singly and in concert, suppressed and withheld from plaintiff the material fact that the said Bank was and had been under examination by federal and state bank examiners and had been *Page 30 warned not to lend any monies whatsoever to defendant Hobbs, or to any of his affiliated enterprises.
 "3. Not knowing this very material fact, plaintiff borrowed from said Bank the sum of $50,000.00 and contemporaneously loaned the same said sum of $50,000.00 to Hobbs. No part of said sum has been repaid. Plaintiff would not have entered into such transaction had he knowledge of the pertinent facts.
* * * * * *
COUNT TWO
 "1. On, to-wit, February 1, 1974, all defendants, singly and in concert, suppressed and withheld from plaintiff the material fact that the First State Bank of Tuscaloosa was and had been under examination by federal and state bank examiners and had been warned not to lend any monies whatsoever to defendant Hobbs, or to any of his affiliated enterprises, and that the Directors of said Bank had agreed in writing that no such loans or extensions of credit would be made.
 "2. On, to-wit, February 1, 1974, plaintiff borrowed from First State Bank of Memphis, Tennessee the sum of $360,000.00 and loaned the same said sum of $360,000.00 to Hobbs. No part of said sum has been repaid. Plaintiff would not have entered into such transaction had he had knowledge of the pertinent facts.
* * * * * *
COUNT THREE
 "1. On, to-wit, January 31, 1974, all defendants, singly and in concert, suppressed and withheld from plaintiff the material fact that the said Bank was and had been under examination by federal and state bank examiners and had been warned not to lend any monies whatsoever to defendant Hobbs, or to any of his affiliated enterprises, and that the Directors of said Bank had agreed in writing that no such loans or extensions of credit would be made.
 "2. Furthermore, in addition to the suppression of said material facts, defendants, singly and in concert, affirmatively represented to plaintiff that a $225,000.00 check of United Leasing Company, payable to defendant Hobbs had been deposited to Hobbs' account at First State Bank, that the check had been dishonored by the Bank on which it was drawn and that First State Bank then had Bank examiners in the Bank, and that the sum must be covered by introducing $225,000.00 into defendant Hobbs' personal account if the Bank was not to be found to be impaired.
 "3. Relying on this representation, which was false, and without knowledge of the pertinent facts withheld, plaintiff borrowed the sum of $225,000.00 from First National Bank of Atlanta and introduced said amount into Hobbs' account at First State Bank of Tuscaloosa, same being represented by a promissory note from defendant Brislin to plaintiff.
"4. No part of said sum has been repaid.
 "5. Plaintiff would not have entered into the said transaction had he had knowledge of the pertinent facts.
* * * * * *
COUNT FOUR
 "1. On, to-wit, February 1, 1974, defendants fraudulently induced plaintiff to purchase a large block of stock in First State Bank of Tuscaloosa, stock then owned by defendant Hobbs, by suppressing and withholding from plaintiff crucial and material facts, namely, that since approximately July 25, 1973, the Bank had been prohibited from extending any credit to defendant Hobbs or to any of his affiliated enterprises, and that contrary to said prohibition, such extensions of credit had been made in large amounts, and by representing as a fact that the condition of the Bank was sound when in truth and in fact there had been overdrafts by Hobbs of such an amount as to endanger the Bank.
 "2. Relying on said false and misleading information, plaintiff consummated the purchase of the said stock, which then had, and now has, a market value substantially *Page 31 
less than the sum which he paid for it." (emphasis added)
The affidavit submitted by Hinton in opposition to the motion for summary judgment states:
 "* * * I was not aware that, in the incidents described in Counts One and Three thereof, Defendants Hobbs and Brislin were acting in their capacities as major stockholder and President of First State Bank of Tuscaloosa, respectively."
This assertion contradicts the description of Hobbs and Brislin in the original complaint. The other affidavit, filed by Hinton's attorney, is equally ineffective. That affidavit alleges:
 "* * * At the time of the filing of the original complaint, I had no proof that in the incidents described in Counts One and Three thereof, Defendants Hobbs and Brislin were acting on behalf of First State Bank of Tuscaloosa and to its benefit as well as to their personal benefit."
Proof of a cause of action is not the test of Rule 9 (h).
In response to interrogatories propounded by the Bank, Hinton stated that various officials of the Bank knew he had gone to Atlanta to get a loan and repeatedly contacted Hinton's office to find out whether he got the loan. In answer to another question, Hinton stated Hobbs advised him he would arrange for him, Hinton, to obtain a loan from the Bank, if he, Hinton, would then lend the proceeds to Hobbs.
This evidence charges Hinton with knowledge of the Bank's possible involvement in the activity complained of in the original complaint. The general rule is that a Bank is liable for the fraudulent acts or representations of an officer or agent acting within the course and apparent scope of his employment or authority. 10 Am.Jur.2d, Banks, § 111.
From a process of elimination, it is fair to conclude that the Bank was another person, firm or corporation that could have withheld the truth concerning the transactions described in the original complaint. From that conclusion, and the admitted knowledge of the true name of the Bank, it follows that Hinton was neither ignorant of the true name of the fictitious defendant nor lacked knowledge of facts giving him a cause of action against that defendant. That cause of action is, therefore, barred by the one year statute of limitations; whether based upon fraud or negligence. Summary judgment was appropriately entered in favor of the Bank and that judgment is affirmed.
AFFIRMED.
BLOODWORTH, JONES, ALMON and SHORES, JJ., concur.