**SPECIAL PROMOTIONS, INC.,**
**Plaintiff-Appellee,**

v.

**SOUTHWEST PHOTOS, LTD., et al., Defendants,**

**Fox-Stanley Photo Products, Inc.,**
**Defendant-Appellant.**

No. 77–1154
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Sept. 19, 1977.

Rehearing Denied Oct. 17, 1977.

* Rule 18, 5 Cir., *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir. 1970, 431 F.2d 409, Part I.

A. W. Worthy, Moulton S. Dowler, Jr., San Antonio, Tex., for defendant-appellant.

Russell Nunnally, Ernest E. Figari, Jr., Dallas, Tex., for plaintiff-appellee.

Before THORNBERRY, RONEY and HILL, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellant-defendant Fox-Stanley Photo Products, Inc. appeals from a $70,000 judgment, plus interest and attorneys' fees, in favor of appellee-plaintiff Special Promotions, Inc. We affirm that judgment.

Special Promotions, a Mississippi corporation engaged in the commercial photo fin-ishing business, brought this diversity action for $140,805 against Fox-Stanley and Southwest Photos, Ltd.[1] Southwest was engaged in the itinerant photography business, employing several photographers who traveled to various department stores and conducted "sittings" for customers. Special Promotions sold equipment and film to Southwest and performed its film processing and printing work, beginning in 1970. By 1972 Southwest was experiencing financial difficulties, and in March of that year Fox-Stanley officials began discussing with their Southwest counterparts the possibility of purchasing Southwest or providing it with much-needed capital. During this time Southwest was reorganized by its principals into Southwest Portraits, Inc., a Texas corporation.

In a memorandum to Fox-Stanley's board of directors, a company vice president indicated that Southwest "could be salvaged" and recommended that Fox-Stanley pour $45,000 into the troubled business in such a way as to minimize Fox-Stanley's exposure to Southwest's creditors yet enable Fox-Stanley to acquire Southwest if it became a profitable concern. This plan was followed. Fox-Stanley loaned the organizing stockholders of Southwest Portraits, Inc., $45,-000, with which they purchased stock in Southwest. This stock was pledged as collateral for the loan, and Fox-Stanley retained an option to purchase the stock in return for cancellation of the loan note. Fox-Stanley made the loan on Nov. 2, 1972, and began providing bookkeeping and management advice to Southwest. Fox-Stanley then contacted Special Promotions to discuss that company's business relationship with Southwest. That relationship continued, and Special Promotions opened a $20,-000 line of credit to Southwest after negotiations with Fox-Stanley officials.

By May, 1973, Fox-Stanley concluded that Southwest could not be saved and on May 27 severed its relationship with the

---

1. Also named were two Oklahoma corporations that served as the general partners of Southwest Photo and the partnership's successor company, Southwest Portraits, Inc. Both Southwest Photos and Southwest Portraits went into bankruptcy and were dismissed from the case, leaving Fox-Stanley as sole defendant.

company. In the months that followed, Special Promotions continued to do business with Southwest and extended the company additional credit. By the time Special Promotions terminated this arrangement, Southwest's account totalled more than $138,000 in unpaid invoices. This suit followed in June, 1974.

The jury found that Fox-Stanley and Southwest had entered into a joint venture from Nov. 2, 1972, until May 27, 1973, and also found that Fox-Stanley exercised control over Southwest during that period. Special Promotions was awarded $70,000 in damages, plus interest, and $26,000 in attorneys' fees (as well as an additional $10,000 in event of an appeal).

■ Appellant first challenges the judgment by raising several sufficiency of the evidence points. However, appellant failed to move for a directed verdict at the close of all the evidence, and it is well established that the sufficiency of the evidence supporting jury submission of a case or the jury's findings is not reviewable on appeal unless a motion for directed verdict was timely made in the trial court. *Little v. Bankers Life & Casualty Co.*, 426 F.2d 509 (5th Cir. 1970); *Vergott v. Deseret Pharmaceutical Co.*, 463 F.2d 12 (5th Cir. 1972). Appellant moved for a directed verdict at the close of appellee-plaintiff's case, but such a motion is not sufficient unless it is renewed at the close of all the evidence. *Porter v. Eckert*, 465 F.2d 1307 (5th Cir. 1972); *see Fredonia Broadcasting Corp. v. RCA Corp.*, 481 F.2d 781 (5th Cir. 1973). *See generally* Wright & Miller, Federal Practice & Procedure, §§ 2534, 2536.

■ Failure to move for a directed verdict does not preclude a party's seeking review on the basis that the trial court erred in not granting the party's motion for a new trial. However, this Court is not inclined to disturb the trial court's exercise of its rather broad discretion in denying such a motion. *Harris v. Chanclor*, 537 F.2d 203 (5th Cir. 1976); *Massey v. Gulf Oil Corp.*, 508 F.2d 92 (5th Cir. 1975). In this posture our inquiry is limited to whether "there was any evidence supporting . .

the jury's finding," irrespective of its sufficiency, or to "whether plain error has been committed . . . ." *Little v. Bankers Life and Casualty Co., supra* at 511. A careful review of the record in the instant case convinces us that we are not faced with an "absolute absence" of evidence that would call for reversal. *See Urti v. Transport Commercial Corp.*, 479 F.2d 766 (5th Cir. 1973).

■ Appellant next contends that an irreconcilable conflict exists between the jury's affirmative answer to a special issue inquiring whether Fox-Stanley and Southwest had engaged in a joint venture and its affirmative answer to another special issue asking whether Southwest was controlled by Fox-Stanley. This contention is without merit. This Court is constitutionally required to "search for a view of the case that makes the jury's answers consistent." *Gonzales v. Missouri R.R. Co.*, 511 F.2d 629, 633 (5th Cir. 1975); *Griffin v. Matherne*, 471 F.2d 911, 915 (5th Cir. 1973). Even if a conflict exists, we must inquire whether the inconsistency can nonetheless be read as "a consistent expression of intent that [defendant] is either liable or excluded from liability." *Griffin v. Matherne, supra* at 916. Here the jury found appellant liable on two alternative theories, joint venture and corporate control. These findings are consistent expressions of intent that appellant is liable, and either will support the judgment. The conflict, if indeed one exists, is thus immaterial.

Appellant also argues that the trial court erred in submitting or in failing to submit various special issues and instructions to the jury. Appellant particularly complains of issues and instructions regarding the definition of joint venture, the standard utilized for corporate control, the damage issues, and a defensive issue of estoppel. We have carefully examined these contentions in light of the controlling Texas law and conclude that the errors, if any, were harmless.

■ Finally, appellant contends that the trial court erred in awarding prejudgment interest to Special Promotions and in

submitting special issues that allowed the jury to award attorneys' fees. Texas specifically authorizes interest on "all open accounts," Tex.Rev.Civ.Stat.Ann. art. 5069–1.03, and the courts have recognized payment of interest on damages where the measure of recovery is fixed by conditions existing at the due date, even though the amount is ascertained and disputed at the time of trial. *See Davidson v. Clearman,* 391 S.W.2d 48 (Tex.1965); *Hayek v. Western Steel Co.,* 469 S.W.2d 206 (Tex.Civ.App. —Corpus Christi 1971), *aff'd,* 478 S.W.2d 786 (Tex.1972). Either approach supports the award of interest in this case. The award of attorneys' fees is appropriate under Article 2226, Tex.Rev.Civ.Stat.Ann.

The judgment is AFFIRMED.