Lewis K. **COKER**, Plaintiff-Appellee,

v.

**AMOCO OIL COMPANY, a corporation, Defendant-Appellant.**

Lewis K. **COKER**, Plaintiff-Appellant,

v.

**AMOCO OIL COMPANY, a corporation; Standard Oil Company (Indiana), a corporation, Defendants-Appellees.**

**Nos. 81–7656, 81–8042.**

United States Court of Appeals, Eleventh Circuit.

July 18, 1983.

Elarbee, Clark & Paul, J. Lewis Sapp, Stephen M. Paskoff, Atlanta, Ga., Engel, Hairston, Moses & Johanson, William B. Hairston, Jr., Birmingham, Ala., for defendant-appellant in No. 81–7656 and defendants-appellees in No. 81–8042.

Lorant, Harris & Yearout, J. Gusty Yearout, Michael J. Evans, Birmingham, Ala., for plaintiff-appellee in No. 81–7656 and plaintiff-appellant in No. 81–8042.

G. Thomas Yearout, Rutledge & Yearout, Birmingham, Ala., for plaintiff-appellant in No. 81–8042.

Before TJOFLAT, HILL and JOHNSON, Circuit Judges.

JAMES C. HILL, Circuit Judge:

These consolidated cases arose from the termination of the employment relationship between Lewis Coker and Amoco Oil Company. In No. 81–7656, Coker brought an action in federal court on April 5, 1979 alleging that his July 22, 1978 termination violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 (1976). A jury awarded Coker $6,993 in damages and Amoco appeals. In No. 81–8042, Coker filed a complaint in state court on June 22, 1979 against Amoco and unnamed in-state defendants alleging that his discharge resulted from fraud and breach of contract. Amoco, after unsuccessfully seeking dismissal of the unnamed defendants in state court, removed the action to federal court on September 15, 1980. Coker appeals the federal court's denial of his motion to remand the action to state court and dismissal on res judicata grounds. We affirm the district court's judgment in No. 81–7656 and vacate and remand the district court's denial of the motion to remand in No. 81–8042.

Lewis Coker began working for Major Gas Company, a corporate predecessor of Amoco, in 1964 as a route salesman. His

duties included selling and distributing liquified petroleum (LP) gas and other merchandise ("Class A" merchandise) to private and industrial customers in areas designated by the company for each salesman. As part of their compensation, Amoco employees participated in a comprehensive benefit plan including a pension plan and life and health insurance coverage. An employee qualified for benefits under the retirement program when he accumulated seventy-five points.

At the trial of the ADEA case, Coker adduced evidence that at the time of his termination, he was fifty-seven years old and had accumulated seventy-one of the required seventy-five points. In order to earn the four additional points, Coker would have needed to work an additional twenty-one months. In 1973, Joe Bearden, Amoco's territorial manager and Coker's supervisor, and Vernon Hargrove, Amoco's Area Sales Manager, began evaluating salesmen on the basis of annual review forms. The forms used until 1975 did not ask any questions concerning the employee's age. Coker received an overall excellent rating in 1974 and an "above average" rating in 1975. The form which Bearden and Hargrove began using in 1976 included questions regarding the employee's years in service and age.

Amoco argues that in 1978, it decided to reduce costs by discharging a salesman. Amoco asserts that it based its decision to terminate Coker on the amount of LP gas and Class A merchandise sales which he had made during 1977 and the first five months of 1978 compared to those of other salesmen. Coker's LP gas sales were the lowest for this period and his sales of Class A merchandise were lowest in 1978 and next to lowest in 1977. Amoco also discharged Jimmy Culbert, a thirty-five year old route salesman, on the same day.

Coker argued to the jury that he was discharged on the basis of age discrimination. He noted that in 1975, Jaffee-Wohl, Coker's largest LP gas customer, switched to natural gas. Despite this loss, Amoco neither reduced Coker's sales goal nor gave Coker any new customer to offset this loss, though Amoco allegedly reduced other sales quotas when younger employees lost customers in similar circumstances. Coker also noted that Amoco did not rehire him for similar positions that became available shortly after his termination.

■ At the conclusion of the plaintiff's case, Amoco unsuccessfully moved for a directed verdict. The defendant did not, however, renew this motion after presenting its case. Coker did not present any rebuttal evidence. Despite not having filed a motion for directed verdict after presenting its evidence, Amoco argues that the evidence was insufficient to support the jury's verdict. It is well-established, however, that an appellate court cannot examine the sufficiency of the evidence supporting the jury's verdict unless the objecting party filed a timely motion for directed verdict with the trial court. *Quinn v. Southwest Wood Products, Inc.*, 597 F.2d 1018, 1024 (5th Cir.1979); *Special Promotions, Inc. v. Southwest Photos, Ltd.*, 559 F.2d 430, 432 (5th Cir.1977); *Little v. Bankers Life and Casualty Co.*, 426 F.2d 509, 510–11 (5th Cir.1970). We may inquire into whether *any* evidence supported submission of the issue but we may not question the sufficiency of whatever evidence we do find. We must limit our examination to whether the trial court committed plain error which, if not noticed, would result in a manifest miscarriage of justice. *Special Promotions, Inc.*, 559 F.2d at 432; *Little*, 426 F.2d at 511.

■ Amoco asserts that we should not apply this standard since it presented only one witness whose testimony comprises only nine pages of the transcript after making its directed verdict motion. *See Martinez Moll v. Levitt & Sons of Puerto Rico, Inc.*, 583 F.2d 565, 569 (1st Cir.1978); *Bayamon Thom McAn, Inc. v. Miranda*, 409 F.2d 968, 971 (1st Cir.1969) (requirement of directed verdict motion at end of all the evidence could be deemed nonessential upon a showing of a court's continuing disinclination to grant such a motion). We decline to adopt this position. Federal Rule of Civil Proce-

dure 50(b) clearly requires a movant to file a directed verdict motion at the end of all the evidence in order to challenge the sufficiency of the evidence on appeal. The length of a movant's evidentiary presentation or demonstration, after the fact, that compliance would probably have been futile does not satisfy the rule's requirement.[1] *See Martinez Moll,* 583 F.2d at 569.

 In order to establish a prima facie case of age discrimination in a reduction-in-force situation, plaintiff ·must: (1) show that he belongs to the statutorily protected age group (40–70); (2) show that he was discharged or demoted; (3) demonstrate that he was qualified to assume another position at the time of his discharge or demotion; and (4) produce evidence, circumstantial or direct, from which a fact finder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue. *Hedrick v. Hercules, Inc.,* 658 F.2d 1088, 1094 (5th Cir. Unit B 1981); *Williams v. General Motors Corp.,* 656 F.2d 120, 129 (5th Cir. Unit B 1981). To satisfy this final requirement, plaintiff must present evidence from which a fact finder might reasonably conclude either that the defendant consciously refused to consider retaining or relocating a plaintiff because of his age or that defendant regarded age as a negative factor in such consideration. *Hedrick v. Hercules, Inc.,* 658 F.2d at 1094; *Williams v. General Motors Corp.,* 656 F.2d at 129–30. In the case at bar, Coker presented evidence satisfying each of the elements of a prima facie case. We therefore affirm the judgment in No. 81–7656.

No. 81–8042 presents problems concerning both removability and the res judicata effect of No. 81–7656. Coker filed his complaint in state court alleging fraud and breach of contract. This was on June 22, 1979, three months after he filed his ADEA complaint and ten months before the trial in the ADEA case commenced. In the state court complaint, Coker alleged that unnamed in-state defendants had participated in the alleged fraud and breach of contract. The state court denied Amoco's motion for partial summary judgment against the unnamed defendants on March 31, 1980. On April 23, 1980, Coker filed a motion to amend his complaint in the ADEA case to allege that Amoco, Standard Oil of Indiana and unnamed agents, servants, and/or employees defrauded him and breached agreements. By this motion, Coker sought to bring the two claims together in the federal court. The federal court denied the motion on the ground of lack of jurisdiction but stated that the order "in no way effects the rights of the parties to proceed in any other forum." On September 15, 1980, four months after the proposed amendment and fifteen months after the state action had been filed, Amoco petitioned to remove the fraud/breach of contract action to federal court. Noting that the presence of fictitious resident defendants destroyed diversity jurisdiction, Amoco filed a motion to strike the fictitious parties as defendants. On December 3, 1980, Coker moved to remand the action and on December 23, 1980 filed a motion to amend this complaint to substitute Joe Bearden and Vernon Hargrove for the unnamed defendants. On January 9, 1981, the district court denied both of Coker's motions. On February 19, the court granted Amoco's motion to dismiss the fictitious defendants. On November 17, 1981, the district court dismissed the action on res judicata grounds holding that the prior decision in the ADEA case barred litigation of these claims which might have been raised in the ADEA action.

As a preliminary matter, we must determine whether the removal petition, filed

---

**1.** After trial, Amoco filed both a motion for a new trial and a motion for J.N.O.V. On July 13, 1981, six months after the district court in the fraud/breach of contract action denied Coker's motion to remand, Amoco withdrew its motion for a new trial. In the ADEA case, Coker had received $6,993.00 in damages and $11,331.66 in attorney's fees and expenses.

Plaintiff had initially sought $100,000 in compensatory damages as well as lost wages in the ADEA case and $500,000 in the then still pending fraud/breach of contract action (which Amoco later successfully asserted was barred by the ADEA judgment). Amoco did not pursue its motion for a new trial in the ADEA case.

fifteen months after the complaint was filed in state court, was timely. 28 U.S.C. § 1446(b) provides that the petition for removal of a civil action shall be filed within thirty days after the defendant receives the initial pleading. If the case stated in the initial pleading is not removable, the defendant may file a removal petition within thirty days after the receipt of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is or has become removable. *Id.*

■■■ Strict application of the timeliness requirement would, Coker asserts, require dismissal of Amoco's petition. Amoco argues that the § 1446 time limitation is merely modal and formal, not jurisdictional. *See Powers v. Chesapeake and Ohio Railway,* 169 U.S. 92, 98, 18 S.Ct. 264, 266, 42 L.Ed. 673 (1898); *Weeks v. Fidelity and Casualty Co.,* 218 F.2d 503, 504 (5th Cir. 1955). Plaintiff's claims against fictitious resident defendants complicates the timeliness issue. Alabama Rule of Civil Procedure 9(h) allows a plaintiff to bring a cause of action against fictitious defendants. A plaintiff may use this rule when he is unaware of a defendant's exact identity at the time the complaint is filed. A plaintiff cannot join fictitious resident defendants in order to deprive a nonresident defendant of the right to remove the action to federal court. *Wecker v. National Enameling & Stamping Co.,* 204 U.S. 176, 27 S.Ct. 184, 51 L.Ed. 430 (1907). An action is not properly removable if it consists of a non-separable controversy involving both resident and nonresident defendants. *Pullman Co. v. Jenkins,* 305 U.S. 534, 539–41, 59 S.Ct. 347, 349–50, 83 L.Ed. 334 (1939). In the absence of proof that the allegations against the fictitious defendants are fraudulent, the complaint does not become removable until the plaintiff takes some affirmative action indicating that he does not wish to pursue his claims against the fictitious defendants. *See Hartwell Corp. v. Boeing Co.,* 678 F.2d 842 (9th Cir.1982); *Preaseau v. Prudential Insurance Co.,* 591 F.2d 74, 77–79 (9th Cir. 1979); *Grigg v. Southern Pacific Co.,* 246 F.2d 613, 619–20 (9th Cir.1957); *Goldberg v.*

*CPC International, Inc.,* 495 F.Supp. 233, 236–38 (N.D.Cal.1980), *rev'd on other grounds,* 678 F.2d 1365 (9th Cir.1982). In *Hamby v. Zayre Corp.,* 544 F.Supp. 176 (N.D.Ala.1982), the court, applying the timeliness requirement to Alabama rule 9(h), held that an action brought against fictitious resident parties is not immediately removable.

■■■ To avoid removal, the plaintiff must describe the fictitious defendants in a way that makes their residence identifiable, *see Baggett v. Alto Corp.,* 459 F.Supp. 989 (N.D.Ala.1978), and must provide some clue as to whom the allegations pertain so as to determine whether the controversies are separable, *see Hartwell Corp. v. Boeing Co.,* 678 F.2d 842 (9th Cir.1982); *Green v. Mutual of Omaha,* 550 F.Supp. 815 (N.D.Cal. 1982). The time for removability does not vary according to the degree of identification of the fictitious defendants in the complaint. *See Preaseau v. Prudential Insurance Co.,* 591 F.2d at 77 n. 2. The thirty day period is tolled until the plaintiff indicates either that the controversy involving the named nonresident defendants is separable or that the fictitious defendants are no longer part of the action. *See id.* at 77, *Goldberg v. CPC International, Inc.,* 495 F.Supp. at 237–38. A removing party can file his motion at any time prior to thirty days after plaintiff has indicated that the action is removable.

■■■ Coker named the nonresident defendants in his complaint as

John Doe, Richard Roe, X, Y, and Z, who are persons, firms or entities that conspired to defraud and/or defrauded plaintiff of certain benefits and compensation and who are otherwise liable for damages complained of in the complaint whose exact identities are unknown but will be added when ascertained and some of the said fictitious parties are resident citizens of the State of Alabama.

Coker did not distinguish between the defendants in his allegations. For example, he contended in Count Two that "the defendants, their agents, servants and/or em-

ployees made fraudulent representations concerning plaintiff's employment with the defendants." We conclude that the allegations against the named and fictitious defendants were not separable. Prior to Amoco's filing the removal petition, Coker took no action such as amending the complaint to exclude the fictitious defendants, striking the fictitious defendants, or discontinuing his action against the fictitious defendants.[2] We therefore conclude that Amoco's removal petition is timely.

Coker challenges the district court's denial of his motion to remand the action. Removability should be determined "according to the plaintiff's pleading at the time of the petition for removal." *Pullman Co. v. Jenkins,* 305 U.S. 534, 537, 59 S.Ct. 347, 349, 83 L.Ed. 334 (1939); *see Porter v. St. Louis-San Francisco Railway Co.,* 354 F.2d 840, 843 (5th Cir.1966); *Parks v. New York Times Co.,* 308 F.2d 474, 478 (5th Cir.1962), *cert. denied,* 376 U.S. 949, 84 S.Ct. 964, 11 L.Ed.2d 969 (1964). On a motion to remand, the removing party bears the burden of proof on the issue of diversity. *Pullman Co. v. Jenkins,* 305 U.S. 534, 59 S.Ct. 347, 83 L.Ed. 334 (1939); *Carson v. Dunham,* 121 U.S. 421, 425–26, 7 S.Ct. 1030, 1031–32, 30 L.Ed. 992 (1887); *see B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir. Unit A 1981). As of the filing of the removal petition, Coker's complaint did not allege a controversy between diverse parties. Coker had alleged causes of action against fictitious resident defendants on the face of his complaint. Amoco's subsequent motion to strike these defendants affected the pleadings after the time of removal and therefore must be disregarded in determining removability. Unserved resident fictitious defendants may not be ignored on removal if the complaint's allegations are directed at all defendants jointly without elaboration as to the particular role of any one defendant. *See Holloway v. Pacific Indemnity Co.,* 422 F.Supp. 1036, 1041 (E.D. Mich.1976). We therefore conclude that Coker's action was not removable on the face of the pleadings.

Amoco may nevertheless prevail on this issue if it shows that the joinder of the non-diverse defendants was fraudulent. The burden of proving these allegations rests on Amoco as the removing party. *Yawn v. Southern Railway Co.,* 591 F.2d 312, 316 (5th Cir.), *cert. denied,* 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 304 (1979); *see Nunn v. Feltinton,* 294 F.2d 450, 453 (5th Cir.1961); *cert. denied,* 369 U.S. 817, 82 S.Ct. 829, 7 L.Ed.2d 784 (1962). In order to establish that a fictitious resident defendant has been fraudulently joined, the removing party must show either that there is no possibility that the plaintiff would be able to establish a cause of action against the resident defendant in state court or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts. *Keating v. Shell Chemical Co.,* 610 F.2d 328 (5th Cir.1980); *Tedder v. F.M.C. Corp.,* 590 F.2d 115 (5th Cir.1979); *Bobby Jones Garden Apartments v. Suleski,* 391 F.2d 172, 177 (5th Cir.1968); *Parks v. New York Times Co.,* 308 F.2d at 478. Both parties may submit affidavits and deposition transcripts. *See B., Inc. v. Miller Brewing Co.,* 663 F.2d at 549. The district court must evaluate all factual issues and questions of controlling substantive law in favor of the plaintiff. *Bobby Jones Garden Apartments,* 391 F.2d at 177. If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and

**2.** We emphasize that Coker could not use Rule 9(h) to prevent Amoco from removing this action if diversity existed. The principal area of operation of Rule 9(h) and its statutory predecessors rests in emergency cases where neither the name nor the identity of the defendant is known and there is urgent need to get service of process upon the party against whom the plaintiff has an action or there is need for immediate seizure of property. *Browning v.*

*City of Gadsden,* 359 So.2d 361, 363 (Ala.1978). Before proceeding to trial, either the plaintiff must take some action in the form of amending the complaint to name or to dismiss the fictitious parties or the trial court must dismiss the action against the unnamed parties, thereby making the residence of all defendants clear for purposes of removal. At that time, the nonresident defendant may remove the action if complete diversity exists.

remand the case to the state court. *Id.; Parks v. New York Times Co.,* 308 F.2d at 477–78.

 Amoco has not proved fraudulent joinder. Simply stated, Amoco argues that Coker's failure to name Bearden and Hargrove as the fictitious defendants demonstrated his belief that he either did not have or did not intend to pursue a cause of action against them. We do not agree. Alabama Rule 9(h) permits plaintiff to name fictitious defendants to preserve claims which exist against parties who are unidentifiable at the outset of the action. *See Minton v. Whisenant,* 402 So.2d 971 (Ala.1981); *Fowlkes v. Liberty Mutual Insurance Co.,* 392 So.2d 803 (1980); *Hinton v. Hobbs,* 349 So.2d 28 (Ala.1977). Coker has not fraudulently joined the fictitious defendants sim-

ply by not naming them immediately after ascertaining their identity and Amoco has failed to prove fraud in Coker's pleadings of jurisdictional facts.[3]

Having concluded that the action in No. 81–8042 was not removable, we need not address Amoco's assertion that the judgment in the ADEA case barred litigation of Coker's fraud and breach of contract claims.[4] The judgment in No. 81–7656 is AFFIRMED. The judgment in No. 81–8042 is VACATED and REMANDED with instructions that the action be remanded to state court.

JOHNSON, Circuit Judge, dissenting:

Although I concur in most of Judge Hill's opinion, I disagree with his resolution of one issue: whether Coker's joinder of ficti-

---

**3.** Amoco contends that even if we conclude that plaintiff has stated claims against resident defendants, the Alabama statute of limitations bars these claims. Rule 9(h) operates only when the identity of the adverse party is unknown, not where the cause of action is unknown. *Fowlkes v. Liberty Mutual Ins. Co.,* 392 So.2d 803 (Ala.1981). The Alabama statute of limitations requires a plaintiff to bring a fraud action against a named defendant within one year of ascertaining a cause of action against a defendant. *See Minton v. Whisenant,* 402 So.2d 971, 973 (Ala.1981). Rule 9(h) does not allow relation back to the filing of the complaint where plaintiff knows the identity of the defendant. *Id.* Consequently, the Rule does not allow a plaintiff to defeat removability for more than one year after identifying the defendant in a fraud action.

Amoco asserts that since plaintiff knew the names of these defendants, Bearden and Hargrove, at least by August 3, 1979, the date of plaintiff's deposition, he was required to name the defendants within the one year statute of limitations for fraud actions, Ala.Code § 6–2–3. *See Hinton v. Hobbs,* 349 So.2d 28 (Ala.1977). The record does not indicate conclusively that Coker knew the names of the fictitious defendants by August 3, 1979. Whether or not he did and whether the Alabama statute of limitations bars the action are questions best left for the Alabama state court on remand.

**4.** Amoco successfully argued to the district court that the judgment in the ADEA case barred litigation of Coker's fraud and breach of contract claims. Coker attempted to assert these claims in the ADEA action by amending his complaint. The district court refused to allow the amendment but specifically noted

that his decision should not preclude Coker from asserting these claims in another action. While Amoco has prevented the judgment in No. 81–7656 from becoming final for res judicata purposes by filing the present appeal, Coker has not appealed the district judge's decision refusing leave to amend but has persisted in the litigation brought initially two months after the ADEA complaint and ten months before Coker sought to amend the ADEA complaint. Although all of Coker's claims arose out of the same transaction, *see Cemer v. Marathon Oil Co.,* 583 F.2d 830 (6th Cir.1978), we note that Coker, who was arguing in the fraud/breach of contract action that no diversity of citizenship existed, could only have brought the action as a pendent claim. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Had Coker conceded that diversity existed, the district court would have been obligated to accept jurisdiction had it been joined to the ADEA case initially since the claim would have rested within the court's original jurisdiction. *See Thermtron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 352–53, 96 S.Ct. 584, 594–95, 46 L.Ed.2d 542 (1976). By not appealing the denial of the amendment and continuing his pending common law action, Coker was taking Judge Guin at his word and complying with the dictates of Restatement (Second) of Judgments § 26 (1982). If Amoco wishes to persist in its res judicata defense in No. 81–8042 on remand before the state tribunal, this opinion does not foreclose it from doing so. *See Southern California Petroleum Corp. v. Harper,* 273 F.2d 715, 719 (5th Cir. 1960) (a "state court is as well qualified as a federal court to protect a litigant by the doctrines of res adjudicata and collateral estoppel").

tious defendants was fraudulent. Because I conclude that the joinder was fraudulent, I would find that the suit was properly removed to federal court.

As the majority notes, Amoco has the burden of proving fraudulent joinder. The standard for determining when joinder is fraudulent was stated in *Parks v. New York Times Company,* 308 F.2d 474 (5th Cir.1962), *cert. denied,* 376 U.S. 949, 84 S.Ct. 964, 11 L.Ed.2d 969 (1964): "[B]ad faith in the joinder is necessary. The defendant may show bad faith in joinder by proving that the plaintiff stated the facts knowing them to be false, or with enough information within reach so that he should have known them to be false." *Id.* at 478. Because Coker named fictitious defendants under the Alabama fictitious parties rule, the purpose and operation of that statute should be examined in determining whether the fictitious defendants were fraudulently joined.

Rule 9(h) of the Alabama Rules of Civil Procedure permits a plaintiff "who is ignorant of the name of an opposing party to join that party by any fictitious name and, when the true name is discovered, thereafter to amend by substituting the true name." *Baggett v. Alto Corporation,* 459 F.Supp. 989, 990 (N.D.Ala.1978). For statute of limitations purposes, the subsequent naming of a real party relates back to the time of filing of the original complaint. Alabama Rule of Civil Procedure 15(c). Rule 9(h) is not intended to be used to indefinitely postpone the naming of a party. Rather, the statute is intended to be used:

> in emergency cases where neither the name nor the identity of the defendant is known, as where the cause of action is known but the party liable is not, and there is urgent need to get service of process upon the party against whom the plaintiff has an action, or there is need for immediate seizure of property.

*Browning v. City of Gadsden,* 359 So.2d 361, 363 (Ala.1978); *Hinton v. Hobbs,* 349 So.2d 28, 29 (Ala.1977).

A brief review of cases discussing the operation of Rule 9(h) demonstrates that Coker's naming of fictitious parties was fraudulent under the rule. In *Hinton v. Hobbs, supra,* the court held that the plaintiff, Hinton, improperly substituted a bank for a fictitious party because he could not have been considered ignorant of the identity of the bank at the outset of the action. The court reviewed the record and noted that Hinton had "knowledge of the Bank's *possible* involvement in the activity complained of in the original complaint." 349 So.2d at 31 (emphasis added). The court did not require that Hinton have definite knowledge of the bank's involvement. Instead, it reasoned:

> From a process of elimination, it is fair to conclude that the Bank was another person, firm or corporation that could have withheld the truth concerning the transactions described in the original complaint. From that conclusion, and the admitted knowledge of the true name of the Bank, it follows that Hinton was neither ignorant of the true name of the fictitious defendant nor lacked knowledge of facts giving him a cause of action against that defendant.

*Id.* A similar standard was followed in *Browning v. City of Gadsden, supra,* where the court held that the plaintiff's use of the fictitious party statute was proper because there were no factual allegations which would show that she "had knowledge of *any* facts concerning the City of Gadsden's *possible* involvement in her personal injury action. . . ." 359 So.2d at 364 (emphasis added). *Hinton* and *Browning* illustrate the principle that fictitious parties should not be capriciously used, but should only be joined if their identity truly cannot be ascertained at the time the suit is filed.

The test used in prior cases applying Rule 9(h) and its predecessor statute[1] differs from the standard followed by the majority. While acknowledging that Rule 9(h) is intended for emergency cases, the majority nevertheless asserts that Coker has not

---

1. The Committee Comments to Rule 9(h) state that the case law construing the predecessor statute, Tit. 7, § 136, Code 1940, should be consulted when applying Rule 9(h).

committed fraud even though he did not name the defendants immediately after ascertaining their identity. The majority's assertion contradicts *Roth v. Scruggs,* 214 Ala. 32, 34, 106 So. 182, 184 (1925), which noted that the predecessor statute of Rule 9(h) was "aim[ed] at getting into court the original party intended to be sued, using a fictitious name, until the true name is ascertained, and the proceeding amended accordingly." The majority also states that the "record does not indicate conclusively that Coker knew the names of the fictitious defendants. . . ." P. 1441 n. 3. The record clearly shows, however, that Coker was aware of facts that would have suggested Bearden's and Hargrove's *possible* involvement. Indeed, my reading of the record indicates that the record conclusively demonstrates that Coker knew their names.

Coker named the fictitious parties as Bearden and Hargrove on December 17, 1980, in conjunction with his motion for remand. This was approximately two and one half years after his cause of action arose, and approximately one and one half years after he filed his original complaint. These lapses of time hardly suggest an emergency situation. Most importantly, Coker stated in his deposition, taken on August 3, 1979, that Bearden and Hargrove had conspired against him. Therefore, he knew at least by that date the identity of the fictitious defendants. *See Shirley v. Getty Oil Co.,* 367 So.2d 1388 (1979) (plaintiff could not claim to be ignorant of name of opposing party where co-worker's deposition demonstrated facts from which plaintiff might have decided to bring claim against co-worker). Moreover, Bearden was Coker's immediate supervisor and Hargrove was the Area Sales Manager. It is incredible for Coker to assert that he did not know or could not have easily learned their names prior to filing his suit, especially when he alleged in his complaint that the defendants made fraudulent misrepresentations to him. The employer-supervisor relationship between Coker and the fictitious defendants is in marked contrast to the relationship between the plaintiff and the fictitious defendants in cases where the use

of Rule 9(h) has been upheld. *Browning v. City of Gadsden, supra,* (fictitious defendant was entity responsible for maintenance of premises where plaintiff injured); *Baggett v. Alto Corporation, supra,* (fictitious defendants were entities responsible for design of machine which injured plaintiff).

Under these facts, it appears that Coker's naming of fictitious defendants was a sham under Rule 9(h). Accordingly, I would hold that Amoco has proved fraudulent joinder, and that the action was properly removed to federal court.