**Dan McCASLIN, Plaintiff,**

v.

**BLUE CROSS AND BLUE SHIELD OF ALABAMA, Defendant.**

**No. CV–91–N–2482–S.**

United States District Court, N.D. Alabama, S.D.

Dec. 20, 1991.

---

Don F. Wiginton, Wiginton & Samsil, Birmingham, Ala., for plaintiff.

Cathy S. Wright, Maynard Cooper Frierson & Gale, Birmingham, Ala., for defendant.

## MEMORANDUM OF OPINION

EDWIN L. NELSON, District Judge.

This is a civil action in which the plaintiff seeks to enjoin the defendant insurance company from terminating his health insurance coverage, a judicial determination that the plaintiff is entitled to continued coverage, and damages for wrongful infliction of mental and emotional distress. The action was removed from the Circuit Court of Jefferson County, Alabama pursuant to 28 U.S.C. § 1441 on the basis of the defendant's claim that the health insurance plan in question is governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461.

### I. Background

The record reflects that the plaintiff, Dr. Dan McCaslin, is a physician licensed to practice in the State of Alabama. He is a member of the Medical Association of Alabama (MASA) and is insured under a Group Hospital and Major Medical Contract established between Mutual Insurance Agency (MIA), on behalf of MASA, and defendant Blue Cross and Blue Shield of Alabama (Blue Cross). Dr. McCaslin and his family have been continuously covered under the MASA group policy since March 1981. In October 1981, Dr. McCaslin was diagnosed with congenital afibrinogenemia. Although Dr. McCaslin ceased practicing medicine because of his disability, he has

remained a member of MASA "licensed and in good standing" and has continued to pay annual insurance premiums.

On July 24, 1991, defendant Blue Cross notified Dr. McCaslin that he was no longer eligible for benefits under MASA's group policy because he was no longer an "active, full-time employee" of MASA. On September 12, 1991, the plaintiff filed a declaratory judgment action in the Jefferson County Circuit Court seeking a determination of his eligibility for continued health insurance coverage under the Blue Cross policy. The defendant was served with the state court complaint on September 23, 1991, and on October 23, 1991, filed a notice of removal on the grounds that the insurance coverage at issue is governed by ERISA. Contemporaneously with the notice of removal the defendant filed a motion to dismiss the action and to strike the claim for punitive damages.[1] The plaintiff has moved to remand, asserting that MASA's group health insurance policy is not an employee benefit plan within the meaning of ERISA. The motion has been briefed and argued and is ready for a decision.

## II. Discussion

### A. *Subject Matter Jurisdiction*

 The removal statute, being one which confers jurisdiction on the federal district courts, must be strictly construed. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). A due respect for state sovereignty and the independence of state courts demands that the federal courts exercise their right to remove cases properly before state courts only in strict conformity with the removal authority granted by Congress. *Ashley v. Southwestern Bell Tel. Co.,* 410 F.Supp. 1389 (W.D.Tex.1976). Doubts concerning removability are to be resolved against removal and in favor of remand. *Green v. Mutual of Omaha,* 550 F.Supp. 815 (N.D.Cal.1982).

 Federal district courts have original jurisdiction over cases raising questions of federal law. 28 U.S.C. § 1331. The "well-pleaded complaint" rule requires that the court determine whether a civil action involves a federal question based on "what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 724, 58 L.Ed. 1218, 1219 (1914). The federal court must determine whether removal was proper "according to the plaintiff's pleadings at the time of the petition for removal." *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440 (11th Cir.1983) (quoting *Pullman Co. v. Jenkins,* 305 U.S. 534, 537, 59 S.Ct. 347, 349, 83 L.Ed. 334, 337–38 (1939)); *see also Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir.1989).

### B. *Basis for Removal*

Blue Cross argues that the health insurance plan available exclusively to members of the Medical Association of the State of Alabama is an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1) and, therefore, that any dispute as to coverage under the plan is governed by the provisions of ERISA. State law claims, such as those presented here, are, according to the defendant, preempted. This argument is premised on (1) the "safe harbor" regulation promulgated by the Secretary of Labor, 29 C.F.R. § 2510.3–1(j), and (2) Eleventh Circuit case law. The so-called "safe harbor" regulation provides in part:

> For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to *employees or members of an employee organization,* under which
>
> (1) No contributions are made by an employer or employee organization;

---

1. Because this action will be remanded to the state court from whence it came, the defendant's motion to dismiss will also be remanded to that court.

(2) Participation in the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510–3.1(j) (emphasis added). Blue Cross concedes that the health insurance plan available to MASA members satisfies paragraphs (1), (2), and (3) of the regulation. Blue Cross argues, however, that the plan does not satisfy paragraph four of the safe harbor regulation because "MASA receives an economical benefit from administering the Blue Cross plan on behalf of its members by retaining the interest which accrues on the premium payments remitted by MASA members to the association." (Affidavit of Emmett Wyatt, filed Dec. 3, 1991, at ¶ 7).

Blue Cross also argues that the health insurance plan at issue is "a 'plan, fund, or program' under the Eleventh Circuit's decision in *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982) (en banc). The Eleventh Circuit in *Donovan* held that an ERISA plan, fund, or program "is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Donovan*, 688 F.2d at 1373; *see also Williams v. Wright*, 927 F.2d 1540, 1543 (11th Cir.1991) (applying *Donovan*). In addition, the *Donovan* court held:

> To be an *employee* welfare benefit plan, the intended benefits must be health, ac-

cident, death, disability, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits; the intended beneficiaries must include union members, employees, former employees or their beneficiaries; and an employer or employee organization, or both, and not individual employees or entrepreneurial businesses, must establish or maintain the plan, fund, or program.

*Donovan*, 688 F.2d at 1373 (emphasis in original). In *Williams, supra*, the Eleventh Circuit noted that a primary purpose of ERISA "is to protect *employees* once a plan is established." *Williams*, 927 F.2d at 1549 (emphasis added).

### C. Statutory Construction

■ The court must apply well-settled principles of statutory construction to determine whether Congress intended that ERISA should govern the relationship between a self-employed physician who purchases health insurance coverage through a plan administered by a state professional association. "[T]he cardinal rule [of statutory construction is] that a statute is to be read as a whole, ... since the meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hospital*, —— U.S. ——, ——, 112 S.Ct. 570, 574, 116 L.Ed.2d 578, 586 (1991) (citations omitted). Absent some clear indication of legislative intent to the contrary, the language of the statute controls its construction. *Ford Motor Credit Co. v. Cenance*, 452 U.S. 155, 158 n. 3, 101 S.Ct. 2239, 2241 n. 3, 68 L.Ed.2d 744, 749 n. 4 (1981). "Where Congress uses terms that have accumulated settled meaning under either equity or the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." *Kungys v. United States*, 485 U.S. 759, 770, 108 S.Ct. 1537, 1546, 99 L.Ed.2d 839, 853 (1988) (quoting *NLRB v. Amax Coal Co.*, 453 U.S. 322, 329, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981)). "Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning

of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used...." *King,* — U.S. at ——, 112 S.Ct. at 574 (quoting *NLRB v. Federbush Co.,* 121 F.2d 954, 957 (2nd Cir.1941) (L. Hand, J.)). Except in "rare and exceptional circumstances," the court's inquiry is complete when it determines that the terms of a statute are unambiguous. *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633, 638 (1981) (quoting *Crooks v. Harrelson,* 282 U.S. 55, 60, 51 S.Ct. 49, 50–51, 75 L.Ed. 156 (1930)). Finally, it is not the court's role to offer its "appraisal of the wisdom or unwisdom of a particular course consciously selected by the Congress." *TVA v. Hill,* 437 U.S. 153, 194, 98 S.Ct. 2279, 2301–02, 57 L.Ed.2d 117, 146 (1978); *see also James B. Beam Distilling Co. v. Georgia,* — U.S. ——, ——, 111 S.Ct. 2439, 2450–51, 115 L.Ed.2d 481, 497 (1991) (Scalia, J., concurring) ("[T]he judicial power ... is the power to 'to say what the law is,' ... not the power to change it." (quoting *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803) (citations omitted)).

The dispute between the plaintiff and Blue Cross requires the court to interpret the meaning of the phrase "employee welfare benefit plan" as it is used in ERISA. Congress enacted the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461, in order to protect the right of employees and their dependents to receive pensions and benefits from private employee welfare and pension plans. *See generally* 29 U.S.C. § 1001. The statute defines an "employee welfare benefit plan" as:

> any plan, fund, or program which heretofore or is hereafter established or maintained by an *employer or by an employee organization,* or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprentice-
> ship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 302(c) of the Labor Management Relations Act of 1947 (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1) (emphasis added).

Construing the terms in the statute in the sense that best harmonizes with the stated policy objectives of the legislature, *United States v. Hartwell,* 73 U.S. (6 Wall.) 385, 396, 18 L.Ed. 830 (1868) (cited in *King,* — U.S. at —— n. 10, 112 S.Ct. at 574 n. 10), the court finds that Congress intended ERISA to regulate health insurance plans providing coverage to *employees.* The statute defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 1002(6). The statute regulates only those plans established by *employers or employee organizations. See* 29 U.S.C. § 1002(1). An "employer" is "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5). An "employee organization" is defined as

> any labor union or any organization of any kind, or any agency or employee representation committee, association, group, or plan, in which *employees* participate and which exists for the purpose, in whole or in part, of dealing with *employers* concerning an *employee* benefit plan, or other matters incidental to *employment relationships;* or any *employees'* beneficiary association organized for the purpose in whole or in part, of establishing such a plan.

29 U.S.C. § 1002(4) (emphasis added). The plaintiff, a self-employed physician licensed to practice in Alabama, is not an *employee* of the Medical Association of the State of Alabama nor is he an *employee* of Mutual Insurance Agency. MASA is not the plaintiff's *employer* nor is it an *employee* organization established for the benefit of its *employee* members within the meaning of ERISA. On the contrary, MASA is a pro-

fessional association which was established by and for the benefit of physicians who are licensed to practice in the State of Alabama. The plain and unambiguous language of the statute makes clear that ERISA regulates only those health insurance plans created and maintained by *employers* or *employee organizations* for the benefit of *employees* and their dependents. The court concludes that the present dispute does not involve "rare and exceptional circumstances," and, therefore, that its inquiry is complete. *See Rubin*, 449 U.S. at 430, 101 S.Ct. at 701.

This conclusion is entirely consistent with both the "safe harbor" regulation, 29 C.F.R. § 2510–3.1(j), and Eleventh Circuit case law. The safe harbor regulation specifically states that it applies to group insurance programs offered to *"employees or members of an employee organization."* 29 C.F.R. § 2510–3.1(j) (emphasis added). As stated above, the plaintiff is not an *employee* as within the meaning of ERISA. Thus, ERISA is not applicable to insureds such as the plaintiff who are self-employed members of a professional association that offers group health coverage as a membership benefit. Similarly, the Eleventh Circuit's decision in *Donovan* makes clear that its analysis applies only to welfare benefit plans established by *employers* or *employee organizations* for the benefit of *employees*, former *employees* or their beneficiaries. *Donovan*, 688 F.2d at 1373. The *Donovan* court stated:

> The gist of ERISA's definitions of employer, employee organization, participant, and beneficiary is that a plan, fund, or program falls within the ambit of ERISA only if the plan, fund, or program covers ERISA participants because of their *employee status* in an *employment relationship*, and an employer or employee organization is the person that establishes or maintains the plan, fund, or program.

*Id.* at 1371 (emphasis added).

In *Baucom v. Pilot Life Ins. Co.*, 674 F.Supp. 1175 (M.D.N.C.1987), the issue was whether the Carolinas Section Professional Golf Association Retirement Plan was an "employee benefit plan" for purposes of ERISA. Although the terms of the plan were unclear, membership in the Carolinas Section Professional Golf Association (CSPGA) was apparently open to golf professionals, assistant golf professionals, and approved tournament players. *Baucom*, 674 F.Supp. at 1177. CSPGA members, therefore, conceivably could be employers, employees, or self-employed. After considering the statutory definitions of the terms "employee," "employer," and "employee organization," the court found that there must be some "commonality of interest" among CSPGA members in order for the CSPGA to be an employee organization and for its members to be employees for purposes of ERISA. The court held that the CSPGA members did not share the requisite common interests, concluding:

> In sum, the CSPGA is a professional association which lacks a uniform interest in the employer-employee relationship. Membership in the CSPGA, and hence the coverage of the plan at issue, is not conditioned on employee status. Some members are employees, some are employers, some are self-employed, and some who are employees of their club or course may in turn become employers of assistant professionals. Because the CSPGA does not pass the commonality-of-interest test, it cannot qualify as an "employee organization," its members are not "employees," and the plan is not an "employee pension plan."

*Id.* at 1180. The court further held that even if CSPGA was an employee organization under ERISA, the evidence was unclear as to whether CSPGA "established or maintained" the pension plan. *Id.* at 1181.

The *Baucom* court's analysis is applicable to the Blue Cross group health insurance policy available to MASA members. MASA members presumably could be licensed physicians who are employers, employees, or self-employed. Blue Cross asserts that "there are only two classes of MASA members: those who are engaged in the active practice of medicine and members who are retired physicians." (Defendant's Memorandum in Opposition to Motion to Remand, at 7 n. 2). MASA mem-

bers, however, clearly represent a broad spectrum of potentially conflicting economic interests. Physicians employed by hospitals have differing economic interests from self-employed physicians engaged in a private practice and from physicians working under contract as employees of a private practice. Thus, like the CSPGA members in *Baucom,* MASA members lack sufficient commonality of interest in the employee-employer relationship to fall within the ambit of ERISA. *See Donovan,* 688 F.2d at 1371; *Baucom,* 674 F.Supp. at 1180.

## III. Conclusion

Plaintiff's health insurance plan is not an employee welfare benefit plan within the meaning of ERISA. The defendant, therefore, has failed to carry its burden of establishing a proper basis for removal jurisdiction. *Fowler v. Safeco Ins. Co.,* 915 F.2d 616, 617 (11th Cir.1990); *see also* 14A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3721, at 209–210 (1985). This action will be remanded to the Circuit Court of Jefferson County, Alabama. An appropriate order will be entered contemporaneously herewith.