Plaintiff below, Pattie Peevy, appeals from a summary judgment in favor of defendant, Alabama Power Company, that dismissed her action for damages for the wrongful death of her intestate decedent on account of trespass, negligence, and wantonness upon the part of an agent, or upon the part of Alabama Power.
Plaintiff's husband, Dossie Peevy, died of a heart attack after arguing with one of defendant's meter readers over whether the meter reader sprayed Dossie Peevy's dog with a chemical irritant or repellent.
 Issue
Whether the trial court erred by holding defendant Alabama Power entitled to judgment as a matter of law because there was no genuine issue of material fact and no actionable conduct upon the part of defendant's agent or upon the part of defendant.
Plaintiff, Pattie Peevy, and plaintiff's husband, Dossie Peevy, were at their residence in Montgomery, Alabama, with their daughter and her boyfriend on the afternoon of 15 August 1978. The Peevys kept two dogs in their fenced backyard. A large one was chained and a small one was loose. The dogs began barking at J.W. Puckett, one of Alabama Power Company's meter readers, as he entered the Peevys' fenced backyard to read the meter there. Puckett carried a dog repellent of the trade name Halt with him as he memorized the meter and exited from the fenced portion of the yard without stopping to write down the reading.
Puckett was just outside the fenced area, writing down his readings, when Peevy, who had suffered a heart attack six weeks previously and was was still under a physician's care, came out of his house to investigate the cause of the dogs' barking.
Peevy told Puckett "* * * don't worry about the dogs. They won't bite. I will put them up. * * * don't spray the dog with the mace." Meanwhile, Puckett continued writing down the reading without responding. Peevy became angry, approached Puckett, tapped him on the shoulder and told him to get out of the yard. Peevy told Mrs. Peevy that Puckett sprayed the dogs; Puckett denied spraying the dogs. Puckett left the premises as soon as he completed recording the meter reading.
After Puckett left, Peevy went to his backyard garden to pick some vegetables. At this time his daughter noticed the small dog rolling over and scrubbing its nose in the grass.
Peevy went back into his house and telephoned Alabama Power Company. He repeated into the telephone receiver several times, "I want to speak to someone in charge of meter reading," then he collapsed and died.
Mrs. Peevy, had, prior to this occasion, asked a previous meter reader to knock on the door so she could put the dogs up while he read the meter. This procedure was followed for several months by the former meter reader but was not followed by Puckett on this, his first time on the route. *Page 973 
Supplemental instruction cards are used to notify meter readers of particular instructions, requests by a homeowner, or of dangerous conditions such as vicious dogs. The meter readers are responsible for preparing supplemental instruction cards when given specific instructions by a homeowner. The preorder clerk of the meter reading department is responsible for placing supplemental instruction cards in route binders for the meter readers. Puckett did not have such a supplemental instruction in his route binder with the meter card for the Peevy house.
Regardless of whether the claims for trespass to the property of Dossie Peevy are construed as claims for trespass to personalty (the dog) or trespass to real property, there must be some evidence that the wrongful act or acts complained of caused Dossie Peevy's death.
Generally the question of proximate cause is for the jury, but when facts are such that reasonable men must draw the same conclusion, the question of proximate cause is one of law for the courts. Morgan v. City of Tuscaloosa, 268 Ala. 493,108 So.2d 342 (1959). In order to present a jury question under either the trespass or the negligence count there must be at least a slight bit of evidence that the wrong complained of proximately caused Peevy's death.
 "`* * * Proof which goes no further than to show an injury could have occurred in an alleged way does not warrant the conclusion that it did so occur, where from the same proof the injury can, with equal probability, be attributed to some other cause. Such a condition is equivalent to an absence of evidence to the true cause, and, when seen clearly to exist, imposes on the court the duty of determining, as a matter of law, against any right of recovery dependent upon the establishment of the causal connection between the injury and the alleged cause. * * *'" Maddox v. Ennis, 274 Ala. 229, 230, 231, 147 So.2d 788, 789 (1962), quoting from Southworth v. Shee, 131 Ala. 419, 30 So. 774 (1901). (Emphasis added.)
The proximate cause of a negligent injury is established where an injury is the natural and probable consequence of the negligent act or omission (or a direct wrongful act) which an ordinary prudent person ought reasonably to foresee would result in injury. Vines v. Plantation Motor Lodge,336 So.2d 1338 (1976).
We find the element of proximate cause lacking in this case and refuse to extend the present limits on legal liability proximately resulting from wrongful conduct.
The count for wanton misconduct is similarly precluded as a matter of law under the facts of this case. Wantonness has been defined as a conscious act or omission with knowledge of existing conditions and while conscious that injury will likely or probably result from such act or omission. Roberts v. Brown,384 So.2d 1047 (1980).
There is not the slightest bit of evidence of any knowledge of conditions which would make the acts of defendant's agent wanton, nor is there evidence that the injury complained of was proximately caused by defendant's acts or omissions or those of its agent. The judgment below is due to be and is hereby affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, SHORES and ADAMS, JJ., concur.