**Willie G. THOMAS, et al., Plaintiffs,**

v.

**JIM WALTER HOMES, INC.,
et al., Defendants.**

Civil A. No. 95–A–814–N.

United States District Court,
M.D. Alabama,
Northern Division.

March 6, 1996.

tiffs and defendant Henry are Alabama citizens, and Jim Walter is a foreign corporation doing business in Alabama. The Plaintiffs' complaint contained six counts. The first five counts alleged various theories of liability against Jim Walter for wrongfully recording a deed evidencing a failed land transaction between the Plaintiffs and defendant Henry; the sixth count alleged that defendant Henry acted negligently when, after receiving tax notices listing him rather than the Plaintiffs as the landowner, he failed to notify the Plaintiffs of the tax notices, resulting in the land being sold at a tax sale to satisfy an accrued tax lien.

On June 13, 1995, Jim Walter removed the case to this court on the basis of the court's diversity jurisdiction under 28 U.S.C. § 1332. Even though the Plaintiffs and defendant Henry share Alabama citizenship, Jim Walter asserted in its Notice of Removal that it properly removed the case based on the following reasoning: (1) the Plaintiffs fraudulently joined defendant Henry solely to prevent removal; (2) as a result, defendant Henry's state citizenship should be disregarded for jurisdictional purposes; and (3) complete diversity of citizenship exists between Jim Walter and Plaintiffs, providing this court with subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.

On July 3, 1995, the Plaintiffs filed their Motion to Remand the case to the state court. The Plaintiffs argue that there is at least a possibility that they can establish their negligence claim against defendant Henry in state court, and therefore they properly joined defendant Henry in this lawsuit. The parties have fully briefed the Plaintiffs' Motion to Remand, submitting the motion before this court for decision.

J.L. Chestnut, Rosemari Claibon, Selma, AL, for plaintiffs.

Richard Gill, Fairley McDonald, Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

### INTRODUCTION

On May 17, 1995, Willie and Jacquelyn Thomas ("Plaintiffs") filed their complaint in the Circuit Court of Lowndes County, Alabama, against Jim Walter Homes, Inc., ("Jim Walter") and Anthony O. Henry. The Plain-

### CIRCUIT POLICY REGARDING REMAND

 Federal courts are courts of limited jurisdiction, *see Kokkonen v. Guardian Life Ins. Co. of America*, — U.S. —, —, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994); *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1095 (1994); *Wymbs v. Republican State Executive Committee*, 719 F.2d 1072,

1076 (11th Cir.1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1600, 80 L.Ed.2d 131 (1984), constitutionally empowered to hear only those cases either specifically mentioned in the Constitution or authorized by Congress. *Kokkonen,* —— U.S. at ——, 114 S.Ct. at 1675. Because of this, the law in the Eleventh Circuit favors remand where federal jurisdiction is not absolutely clear. As stated by the Eleventh Circuit, "in deciding a motion to remand where the plaintiff and defendant disagree on issues of jurisdiction, questions or doubts are to be resolved in favor of returning the matter to state court." *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994).

## STANDARD FOR REMOVAL BASED ON FRAUDULENT JOINDER

A defendant may remove a state court proceeding to federal court under 28 U.S.C. § 1441(a) if the federal court could have entertained the suit originally. To exercise original jurisdiction over a civil action concerned solely with state-law claims, the civil action must be between citizens of different states. *See* 28 U.S.C. § 1332(a)(1). Furthermore, the Supreme Court of the United States interprets § 1332(a)(1) to require complete diversity between opposing parties—no individual plaintiff and defendant may share the same state citizenship—before subject-matter jurisdiction vests with the federal district court. *See Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

▮▮ Because of the complete diversity requirement, a plaintiff may prevent removal simply by joining to the suit a defendant sharing the same state citizenship. However, the filing of a frivolous or otherwise illegitimate claim against a nondiverse defendant solely to prevent removal is a "fraudulent joinder," and courts may disregard the citizenship of fraudulently joined defendants when assessing whether complete diversity exists. *See Tedder v. F.M.C. Corp.,* 590 F.2d 115, 117 (5th Cir. 1979).[1]

▮▮ The burden of proving fraudulent joinder rests with the removing party. *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440 (11th Cir.1983). The Eleventh Circuit prescribes a twofold test for determining whether a defendant has been fraudulently joined: the removing party must show either (1) that there is no possibility the plaintiff could establish a cause of action against the resident defendant in state court or (2) that the plaintiff fraudulently pleaded jurisdictional facts. *Id.* at 1440. These determinations should be made based upon the plaintiff's pleadings at the time of removal. *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir. 1989). When considering the issue of fraudulent joinder, "the district court should resolve all questions of fact and controlling law in favor of the plaintiff and can consider any submitted affidavits and/or deposition transcripts." *Id.*

## FACTS

The submitted materials, viewed in a light most favorable to the Plaintiffs, establish the following facts:

In September of 1991, defendant Henry contacted the Plaintiffs seeking to purchase their plot of land in the Town Creek Subdivision of White Hall in Lowndes County, Alabama. He told the Plaintiffs that he wanted to purchase a home from Jim Walter that would be built on this land.

Jim Walter contacted the Plaintiffs in October of 1991 and asked them to close the land sale in Jim Walter's office. The Plaintiffs subsequently went to Jim Walter's office where they received a check for One Thousand Five Hundred Dollars ($1,500.00) from defendant Henry in exchange for their signature to a deed that transferred title to the land to defendant Henry. The deed unconditionally conveyed fee simple title to defendant Henry, who took physical possession of the deed immediately after the Plaintiffs signed it.

---

**1.** In *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

The Plaintiffs knew that defendant Henry needed a loan to purchase the home and insisted that Jim Walter not record the deed unless defendant Henry received the loan. Jim Walter agreed.

Defendant Henry never received the loan and was unable to purchase the house. He contacted the Plaintiffs and asked them to destroy his check, not yet cashed, because he no longer wished to purchase the land. The Plaintiffs agreed and destroyed the check. Both sides apparently understood that defendant Henry never purchased the land.

Jim Walter recorded the deed even though defendant Henry never obtained financing. As a result, the tax assessor sent tax notices for the accrued property taxes to defendant Henry instead of the Plaintiffs. Defendant Henry received several tax notices listing him as the landowner and directing him to pay the taxes. He never responded to the notices and determined that he would not pay these taxes. Eventually, defendant Henry received a tax notice indicating that the land would be sold at a tax sale if he failed to pay the taxes soon. Defendant Henry never responded to the tax notice, and the land was sold at a tax sale in June of 1994.

The Plaintiffs, believing they still held title to the land, sold the land in November of 1994. Much to their surprise, the tax assessor's office informed the Plaintiffs that the land belonged to the person who purchased it at the tax sale.

On May 17, 1995, the Plaintiffs filed suit against Jim Walter and defendant Henry. With regard to defendant Henry, the Plaintiffs claim that he negligently failed to notify them of the tax notices and impending tax sale, resulting in the taxes remaining unpaid and their land being sold at the tax sale.

## ANALYSIS

Jim Walter argues that the Plaintiffs cannot possibly establish their negligence claim against defendant Henry for three reasons: (1) the applicable statute of limitations bars the claim; (2) the tax sale did not injure the Plaintiffs because they no longer owned the land when it was sold; and (3) even if the Plaintiffs suffered a loss of some kind, the recordation of the deed, not defendant Henry's failure to notify the Plaintiffs of the impending tax sale, proximately caused this loss.

The court first considers whether the statute of limitations bars the Plaintiffs' negligence claim against defendant Henry. Finding that Jim Walter offers no proof that the claim is time-barred, the court proceeds to examine whether the Plaintiffs suffered a loss because of the tax sale that might be recouped through their negligence claim against defendant Henry.

## I. Whether the Statute of Limitations Bars the Negligence Claim

■ ▬▬▬ Jim Walter argues that "[i]f Plaintiffs' true negligence claim against Defendant Henry is the recordation of the deed, then such claim is clearly barred by the applicable two year statute of limitations and Plaintiffs could not possibly prevail on any such claim against Defendant Henry." (Not. Removal at 7.) The court, however, looks to the negligence claim alleged in the Plaintiffs' complaint, not to some other claim Jim Walter describes as the "true" negligence claim. Count VI of the Plaintiffs' complaint grounds the negligence claim against defendant Henry on his "failure to reveal to or notify Plaintiffs or others he was receiving tax notices for said property." (Compl. ¶ 46.) Jim Walter does not provide the court with the dates that defendant Henry received the tax notices, and thus Jim Walter offers no proof that a claim premised on the receipt of these tax notices is untimely. The court therefore proceeds to examine whether the Plaintiffs could possibly establish their negligence claim against defendant Henry in state court.

## II. Whether the Plaintiffs Might Establish Their Negligence

### Claim Against Defendant Henry in State Court

▬▬▬ The Supreme Court of Alabama defines negligence as follows:

Negligence is the failure to do what a reasonably prudent person would have done under the same or similar circumstances, or the doing of something that a

reasonably prudent person would not have done under the same or similar circumstances.... To recover under a negligence claim, the plaintiff must establish (1) that Jim Walter owed a duty to the plaintiff; (2) that Jim Walter breached that duty; (3) that the plaintiff suffered a loss or an injury; and (4) that Jim Walter's negligence was the actual and proximate cause of that loss or injury.

*Ford Motor Co. v. Burdeshaw*, 661 So.2d 236 (Ala.1995) (citations omitted). To prove fraudulent joinder, Jim Walter need only show that the Plaintiffs cannot possibly establish any one of these elements. The court will therefore consider whether the Plaintiffs can establish each element. Because Jim Walter focuses on the element of injury, and the other elements depend on the foreseeability of injury, the court first considers whether the tax sale injured the Plaintiffs. Finding that it did, the court continues onward to examine whether the Plaintiffs might establish the remaining elements of their negligence claim against defendant Henry.

### A. The Plaintiffs' Loss Resulting From the Tax Sale

Jim Walter argues that the Plaintiffs relinquished their interest in the property when they physically delivered to defendant Henry the deed that unconditionally granted him fee simple title. Because the deed fails to condition the transfer of title on full payment of consideration, Jim Walter argues that such a condition never existed, and thus defendant Henry retained fee simple title even though he never paid the promised consideration. As a result, the argument concludes, the Plaintiffs could not have been injured by the sale of land they no longer owned.

The Plaintiffs respond that they owned the land at the time of the tax sale based on the following reasoning: The "delivery" of a deed, i.e., delivery that transfers title, cannot occur without the grantor's accompanying intent to relinquish his interest in the property. The Plaintiffs never intended to convey title to defendant Henry without payment of consideration; therefore, because defendant Henry never paid consideration, the Plaintiffs never parted with title to the land, but instead owned the land when it was sold at the tax sale. Thus, the Plaintiffs suffered injury when their land was sold at the tax sale.

### 1. The Plaintiffs' Interest in the Land at the Time of the Tax Sale

 Jim Walter correctly asserts that defendant Henry owned the land as soon as he obtained physical possession of the deed that unconditionally granted him fee simple title. The delivery of a deed complete on its face to the grantee, as here, is an absolute delivery, whatever conditions may be orally annexed to qualify or postpone its operation. *Wells v. Wells*, 249 Ala. 649, 32 So.2d 697, 698 (1947). "The general rule is that the delivery of a deed to a grantee cannot be a delivery in escrow.... We do not question the doctrine, so firmly established, that a deed cannot be delivered to the grantee, to be held by him as an escrow, and to become valid and binding as a conveyance, only on the happening of an event to transpire afterwards." *Hume v. Kirkwood*, 216 Ala. 534, 113 So. 613, 614 (1927) (citations omitted).

 Thus, to condition the transfer of title on full payment of the promised consideration, the Plaintiffs must have either recorded the condition in the deed itself or conveyed the deed to a third party with instructions to deliver the deed only upon full payment of the consideration. They did neither and therefore unconditionally granted fee simple title to defendant Henry at the moment they gave him the deed. This does not mean, however, that the tax sale did not injure the Plaintiffs.

 Alabama law provides an equitable interest, known as a "vendor's lien," in favor of a grantor parting with title to land and taking no security for the unpaid purchase money. "The vendor's lien is a creature of equity, based on a principle of natural justice; namely, that no one should take the lands of another without payment of the consideration therefor. No evidence of an intent to reserve such lien is required. Unless intentionally waived, it arises as a matter of equitable right." *Lindsey v. Thornton*, 234 Ala. 109, 173 So. 500, 501 (1937). Thus, at the time of the tax sale, the Plaintiffs held an

implied lien on the land for the unpaid purchase money. The tax sale injured the Plaintiffs to the extent it made foreclosure of this lien more costly and difficult.

## 2. *The Tax Sale's Impact on the Plaintiffs' Ability to Foreclose Their Vendor's Lien*

The tax sale never extinguished the Plaintiffs' lien on the land, but it did add an extra hurdle for the Plaintiffs to overcome before they can foreclose on their lien. Anyone with an interest in property sold at a tax sale may timely redeem this interest:

> "Real estate which hereafter may be sold for taxes and purchased by any [purchaser other than the state] may be redeemed at any time within three years from the date of the sale by ... any person having an interest therein, ... legal or equitable, ... including a ... creditor having a lien thereon...."

Ala.Code § 40–10–120 (1975) (Michie 1993 Replacement Volume). Thus, the Plaintiffs have three years from the date of the tax sale in June of 1994 to "redeem" their equitable interest in the land. Of course, the Plaintiffs must pay certain costs to redeem their interest.

To redeem an interest in land that existed prior to a tax sale, the redeemer must pay to the probate court certain costs and fees, including the price paid by the purchaser at the tax sale:

> In order to obtain the redemption of land from tax sales where the same has been sold to one other than the state, the party desiring to make such redemption shall deposit with the judge of probate of the county in which the land is situated the amount of money for which the lands were sold, with interest thereon at the rate of 12 percent per annum from date of sale, together with the amount of all taxes which have been paid by the purchaser, ... with interest on said payment at 12 percent per annum.... In all redemptions of land from tax sales, the party securing the redemption shall pay all costs and fees as herein provided for due to officers and a fee of $.50 to the judge of probate for his services in the matter of redemption.

Ala.Code § 40–10–122 (1975) (Michie 1993 Replacement Volume). These are the statutorily prescribed costs of redemption, which do not include certain additional costs, such as attorney fees, that might accompany redemption. The Plaintiffs would not be forced to incur these costs if the land had never been sold at the tax sale. Thus, the tax sale injured the Plaintiffs to the extent that they must incur the additional costs of redemption to foreclose their vendor's lien.

## B. *Defendant Henry's Duty to Notify the Plaintiffs of the Tax Sale*

To recover their loss from defendant Henry, the Plaintiffs must establish that he owed a duty to notify someone of the tax notices. In Alabama, "[t]he ultimate test of the existence of a duty to use due care is found in the foreseeability that harm may result if care is not exercised." *Ledbetter v. United Ins. Co.*, 624 So.2d 1371, 1373 (Ala.1993) (quoting *Buchanan v. Merger Enterprises, Inc.*, 463 So.2d 121, 126 (Ala.1984)).

A state court might find that defendant Henry could foresee that the Plaintiffs would be harmed unless he notified them of the impending tax sale. Defendant Henry knew that he never paid for the land as promised and thus should have known that the Plaintiffs retained an interest in the land pending receipt of payment. Furthermore, defendant Henry, as a reasonably prudent person, should have known that the sale of land at a tax sale harms those with an interest in the land. Finally, it might be found that defendant Henry knew or should have known that the Plaintiffs were unaware of the delinquent tax debt because (1) the tax notices were directed to him, not the Plaintiffs, and (2) the repeated issuance of tax notices indicated that the Plaintiffs had not paid the taxes, when they had an interest in doing so. Defendant Henry had no problem contacting the Plaintiffs when he wanted them to destroy his check and apparently could have contacted them again with little effort. In these circumstances, a state court might hold that defendant Henry owed a duty to contact the Plaintiffs and inform them of the impending tax sale.

### C. Defendant Henry's Breach of His Duty and the Plaintiffs' Loss

The parties agree that defendant Henry never informed the Plaintiffs of the tax sale. Moreover, as previously explained, the tax sale injured the Plaintiffs. It is therefore possible that the Plaintiffs could establish the first three elements of negligence—duty, breach of duty, and injury—against defendant Henry in state court. If the Plaintiffs can possibly establish that defendant Henry's negligence proximately caused their loss flowing from the tax sale, they might be able to establish their negligence claim against defendant Henry in state court.

### D. Whether Defendant Henry's Negligence Proximately Caused the Plaintiffs' Loss

 To establish their negligence claim against defendant Henry in state court, the Plaintiffs must establish that defendant Henry's failure to notify them of the tax notices proximately caused their loss. "The proximate cause of a negligent injury is established where an injury is the natural and probable consequence of the negligent act or omission ... which an ordinary prudent person ought reasonably to foresee would result in injury." *Peevy v. Alabama Power Co.*, 393 So.2d 971, 973 (Ala.1981).

A state court could find that, had the Plaintiffs known of the delinquent taxes, they would have paid them to prevent the sale of the land at the tax sale.[2] Moreover, as previously explained, a state court might find that defendant Henry could foresee that the Plaintiffs would be harmed by the tax sale unless notified of the delinquent tax debt. He failed to notify them, and the foreseeable consequence resulted: the tax assessor sold the land to satisfy the tax lien. A state court might find the Plaintiffs' resulting injury to be the natural and probable consequence of defendant Henry's omission, establishing the final element of proximate cause.[3]

 Jim Walter's argument that the recordation of the deed proximately caused the Plaintiffs' loss, even if correct, does not preclude defendant Henry's liability. An injury may have more than one proximate cause. *See Springer v. Jefferson County*, 595 So.2d 1381, 1384 (Ala.1992).

Having found that the Plaintiffs might possibly establish each and every element of their negligence claim against defendant Henry, the court concludes that defendant Henry was not fraudulently joined in this lawsuit.

### CONCLUSION

For the foregoing reasons, and given the strong policy in this Circuit of resolving any doubts in favor of deference to the state court, this court cannot find that there is "no possibility" of the Plaintiffs establishing a negligence claim against defendant Henry in state court. Consequently, the Plaintiffs did not fraudulently join defendant Henry in this lawsuit, and his state citizenship should be considered in assessing whether complete diversity exists between the parties. Because the Plaintiffs and defendant Henry are Alabama citizens, the court finds that it cannot exercise subject-matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1). Accordingly, the court ORDERS the following:

(1) The Plaintiffs' Motion to Remand is GRANTED;

(2) Pursuant to 28 U.S.C. § 1447(c), this cause is remanded to the Circuit Court of Lowndes County, Alabama.

The Clerk is directed to take appropriate action to effect the remand.

---

**2.** Jim Walter argues that the Plaintiffs could not have paid taxes on behalf of the landowner, but cites no authority for this position. The court finds this position rather dubious and rejects it in the absence of authority to the contrary.

**3.** In further support of this possibility, the court notes that the Supreme Court of Alabama generally considers the question of proximate cause to be a jury question. *Peevy*, 393 So.2d at 973.