732 So.2d 985 (1998)
Dixie MARSH
v.
Brian C. WENZEL, M.D., and Pathology Laboratory Associates, P.A.
1970352.
Supreme Court of Alabama.
December 11, 1998.
Rehearing Denied April 16, 1999.
*986 Peter F. Burns of Burns, Cunningham & Mackey, P.C., Mobile, for appellant.
Michael A. Florie, Robert P. MacKenzie III, and Reed R. Bates of Starnes & Atchison, L.L.P., Birmingham, for appellees.
LYONS, Justice.
The plaintiff, Dixie Marsh, appeals from a summary judgment entered in favor of the defendants Brian C. Wenzel, M.D., and Pathology Laboratory Associates, P.A. ("the Laboratory"). We affirm.
In February 1993, Marsh discovered a mass in her left breast. She had a mammogram, which did not reveal the mass but did reveal the presence of microcalcifications, which can suggest the early stages of a malignancy. Marsh consulted a surgeon, Dr. W. Rodgers Green. On March 12, Dr. Green performed a biopsy and excised certain tissue for examination. The excised tissue was delivered to the Laboratory, where Dr. Wenzel, a pathologist, examined it. Dr. Wenzel reported to Dr. Green that the tissue examined was not malignant. Dr. Green reported to Marsh that she did not have a malignancy. A mass in Marsh's breast still was present, however, and she continued to see Dr. Green throughout the summer of 1993. On September 28, 1993, Dr. Green removed the mass. A biopsy of that tissue revealed the presence of infiltrating ductal cell carcinoma. Marsh underwent a mastectomy, chemotherapy, and other treatment, including a bone-marrow transplant.
On March 10, 1995, Marsh, acting pro se, sued Dr. Green and his professional corporation, W. Rodgers Green, M.D., P.C., charging Dr. Green with medical negligence in failing to remove the cancerous mass from her breast.[1] She filed her complaint within two years of the March 12, 1993, surgical procedure, and it included allegations against fictitiously named defendants. When the action was commenced, it was undisputed that six months after the initial procedure Marsh was found to have an aggressive and lethal tumor that had metastasized. The governing *987 statute of limitations for an action alleging medical negligence is found in the Alabama Medical Liability Act, § 6-5-480 et seq., Ala.Code 1975. A plaintiff must commence an action against a physician or other health-care provider within two years from the date of the act or omission complained of; however, when a plaintiff does not discover the cause of action, and could not reasonably have discovered it within two years, then the plaintiff may commence the action within six months of the date of discovery, but "in no event may the action be commenced more than four years after [the alleged medical negligence occurred]." § 6-5-482(a), Ala.Code 1975.
Marsh initially did not sue Dr. Wenzel or the Laboratory. Dr. Green was deposed three years and two months after the date of the initial surgical procedure. He testified that at the time of the initial procedure he could not find, and did not remove, the mass that later was found to be cancerous; that at that time the breast tissue looked normal and not cancerous; and that the tissue he removed for analysis was not cancerous. The pathology report from Dr. Wenzel stated that the entire specimen had been submitted for microscopic examination and that it was benign.
During the pendency of Marsh's action, Dr. Wenzel and the Laboratory continued to make and to disseminate to Dr. Green and his experts recut slides of the tissue removed during Marsh's initial biopsy. Dr. Wenzel reexamined the tissue when Marsh's cancer was discovered, which was some six months after the initial procedure; again two years and nine months after the procedure; and again three years and eight months after the procedure. He remained satisfied with the accuracy of his initial report and so advised Dr. Green. Approximately one month after the expiration of the four-year period during which an action alleging medical negligence could be commenced, the presence of cancerous tissue in the specimens removed during Marsh's initial procedure was detected for the first time. Dr. Green immediately contradicted his deposition testimony by amending his answers to interrogatories to state that the tissue removed during the initial procedure indeed had been cancerous. Marsh then deposed Dr. Wenzel. On June 3, 1997, Marsh amended her complaint to charge Dr. Wenzel and the Laboratory with medical negligence in failing to detect the cancerous tissue.[2] Marsh's amended complaint included allegations that the Laboratory had breached a fiduciary duty to her and had breached an implied contract when it disseminated slides of her tissue without her knowledge or consent.
Dr. Wenzel and the Laboratory moved for a summary judgment, asserting that the statute of limitations barred Marsh's claims and asserting that the allegations relating to the dissemination of her tissue were insufficient, as a matter of law. The trial court entered a summary judgment based on both theories, and certified that judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. Marsh argues that the entry of the summary judgment as to Dr. Wenzel and the Laboratory was error.
Dr. Wenzel and the Laboratory contend that the rule of repose in § 6-5-482 allowing four years for the filing of a medical-liability action prohibits the application in a medical-liability case of the doctrine of relation back that normally is available pursuant to Rule 15(c)(4), Ala. R. Civ. P., when a plaintiff commences an action by suing both named and fictitious defendants. The trial court concluded that Marsh's amended complaint was barred by the rule of repose because it was filed more than four years after the act or omission that gave rise to Marsh's cause of action against Dr. Wenzel and the Laboratory for medical negligence. We disagree with that conclusion. The purpose of the doctrine of relation back is to provide a *988 plaintiff a mechanism for giving vitality to a later filing as if it had been made at the time of the initial action. Section 6-5-482 speaks of the commencement of an action as the necessary operative event. It does not expressly exclude the availability of fictitious-party practice and its doctrine of relation back. Once the plaintiff complies with Rule 9(h), Ala. R. Civ. P., in an action that otherwise is timely filed, the doctrine of relation back, set out in Rule 15(c)(4), permits the plaintiff to satisfy the prerequisite that the action "be commenced" as set forth in § 6-5-482.
Because § 6-5-482 does not provide an absolute bar to Marsh's action against Dr. Wenzel and the Laboratory, we must determine whether Marsh satisfied the requirements of Rule 9(h) so as to entitle her to the benefits of the doctrine of relation back. The trial court concluded that she did not satisfy those requirements. Rule 9(h) provides:
"Fictitious Parties. When a party is ignorant of the name of an opposing party and so alleges in the party's pleading, the opposing party may be designated by any name, and when that party's true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name."
Marsh knew the identity of the pathologist before the expiration of the four-year period in which an action for medical malpractice must be commenced. Although she was ignorant of his identity when she commenced her action by suing Dr. Green, Dr. Wenzel's name was included on her medical records. Marsh cannot reasonably be deemed to have been ignorant of matters clearly set forth in the records. Miller v. Norwood Clinic, Inc., PC, 577 So.2d 860 (Ala.1991). Even though Marsh commenced this action pro se,[3] we simply cannot relax the rules for pro se litigants. Boros v. Baxley, 621 So.2d 240 (Ala.1993), cert. denied, 510 U.S. 997, 114 S.Ct. 563, 126 L.Ed.2d 463 (1993). Thus, in order to use the relation-back principle of Rule 9(h), Marsh must demonstrate that when she filed her action containing allegations against fictiously named parties, she was ignorant of the cause of action she later stated against Dr. Wenzel and the Laboratory. The dispositive question is whether a plaintiff's ignorance of a cause of action against a particular defendant is to be treated the same as the plaintiff's ignorance of the identity of that defendant. If it is, then whether Marsh was ignorant of her causes of action against these two defendants and, if so, whether her ignorance was reasonable become questions for the jury. Cf. John Crane-Houdaille, Inc. v. Lucas, 534 So.2d 1070 (Ala.1988) (the jury must resolve a disputed issue regarding the plaintiff's ignorance of the identity of a defendant designated as a fictitious party when the complaint was filed).
Rule 9(h) was derived from a statute that had been construed in Roth v. Scruggs, 214 Ala. 32, 106 So. 182 (1925). In Roth, the Court described the fictitious-party statute as being an emergency statute intended primarily for cases in which the name of the defendant was unknown, including cases in which neither the name nor the identity of the defendant was known, such as cases in which only the cause of action is known. Soon after Rule 9(h) became effective, this Court held, in Hinton v. Hobbs, 349 So.2d 28, 29 (Ala. 1977), that relation back was not available where the plaintiff had known the identity of a defendant but had lacked knowledge of facts giving him a cause of action against that defendant. Under such circumstances, the plaintiff was not "ignorant" within the meaning of Rule 9(h). Soon thereafter, in Browning v. City of Gadsden, 359 So.2d 361 (Ala.1978), overruled on other grounds, City of Birmingham v. Davis, 613 So.2d 1222 (Ala.1992), the Court, citing Roth and Hinton with approval, held that a plaintiff could amend a complaint to add a defendant whose *989 identity was known but as to whom the plaintiff was ignorant of facts giving rise to a cause of action.
Does Browning introduce a general rule making Rule 9(h) available when the plaintiffs "ignorance" goes to the existence of a cause of action? No support for such a rule can be found in Columbia Engineering Int'l, Ltd. v. Espey, 429 So.2d 955 (Ala.1983), where Justice Jones, who had concurred in Browning, wrote for this Court:
"Rule 9(h) is not intended to give plaintiffs additional time beyond the statutorily prescribed period within which to formulate causes of action. Instead, the principal reason for the rule is to toll the statute of limitations in emergency cases where [the] plaintiff knows he has been injured and has a cause of action against some person or entity, but has been unable to ascertain through due diligence the name of that responsible person or entity. Browning v. City of Gadsden, 359 So.2d 361 (Ala.1978).
"A contrary rule would emasculate the statute, of limitations, which sets the time period a plaintiff has in which to determine who has hurt him and how. Indeed, such an interpretation would amount to nothing less than the creation of a `discovery' exception to the statute of limitations. Additionally, the argument in favor of such an interpretation would support a tolling of the statute until discovery of the cause of action, rather than the classical tolling until discovery of injury which is generally contemplated by our discovery statutes."
429 So.2d at 959 (emphasis in original). The Court concluded that "Rule 9(h) was not meant to excuse ignorance of the identity of a cause of action, but only ignorance of the name of the party against whom a cause of action is stated." Id. at 960. For a similar holding, see Minton v. Whisenant, 402 So.2d 971 (Ala.1981) (knowledge of the defendant's identity, and ignorance of a cause of action, not sufficient to allow relation back under Rule 9(h)).
Marsh relies on a broad reading of Browning and Dannelley v. Guarino, 472 So.2d 983 (Ala.1985), to support her argument that we should recognize a plaintiff's ignorance of a cause of action as justification for invoking the doctrine of relation back under Rule 15(c)(4). However, those two cases stand only for the proposition that one's ignorance of the existence of a relationship that could give rise to a duty is subsumed by the concept of "ignorance of identity." As this Court stated in Dannelley, "there is no evidence that the plaintiffs were aware or should have been aware at the time of the filing of the complaint that the duties of either defendant might, under certain circumstances, involve the safety inspection of city equipment." 472 So.2d at 986. Any other construction would insulate all well-known public figures or even neighbors from joinder through fictitious-party practice, simply because of the fact that plaintiffs would be aware of their existence.
Can Marsh satisfy the requirement that she show she was ignorant of a relationship that could give rise to a duty? Most closely analogous is Harmon v. Blackwood, 623 So.2d 726 (Ala.1993), where the identity of a treating physician had been known to the plaintiff. This Court held:
"When the plaintiff filed the original complaint against the two named defendants and the fictitiously named defendants number 3 and number 4, he was apparently relying on a discussion with Dr. Edward Conner, a neonatologist, concerning the involvement in the child's death of the nurses in the nursery at the hospital and of the obstetrician who had delivered the child. Nonetheless, when a plaintiff knows the name of a physician and the involvement of that physician in the treatment of the patient, it is incumbent upon the plaintiff, before the running of the statutory period, to investigate and to evaluate his claim to determine who is responsible for the injury and to ascertain whether *990 there is evidence of malpractice. In this case, the plaintiff did not do that."
623 So.2d at 727. Marsh attempts to distinguish Harmon by asserting that she was ignorant of the identity of the pathologist when she filed her action. However, as previously noted, one could not reasonably conclude that she was ignorant of matterssuch as the name of the pathologist who examined the tissue samples that clearly were set forth in her medical records. Miller v. Norwood Clinic, 577 So.2d at 864.
Therefore, because the doctrine of relation back is not available to Marsh under the facts and circumstances of this case, we affirm the summary judgment as it relates to Marsh's medical-negligence claims against Dr. Wenzel and the Laboratory. We are not oblivious to the reality of these hard facts. But we are constrained by the time limits imposed by the legislature on the commencement of actions. Counsel's obligation to act in good faith and to act consistently with high ethical standards requires that counsel strike a balance between, on the one hand, the obligation to present, within the period of limitations, the full range of claims essential to protect the interests of a plaintiff, and, on the other hand, the competing obligation to refrain from bringing groundless or frivolous claims. Whether it would be wise to create an exception to the statute of limitations when a defendant has not been joined on account of counsel's good faith efforts to satisfy these competing obligations is not properly a question for this Court. We recognize that because we are declining to engage in a legislative function, a potentially liable defendant might have a valid statute-of-limitations defense under such circumstances. But this dilemma is as old as statutes of limitations. However, second-guessing the wisdom of any choice between these competing obligations should be undertaken only with a high degree of deference and great caution, lest we promote an unhealthy public policy of pressuring a plaintiff to assert claims that ought not be pursued.
We now turn to Marsh's claims alleging breach of a fiduciary duty and breach of an implied contract, both claims arising from the Laboratory's providing samples of her tissue to an expert witness retained by Dr. Green. This Court held in Mull v. String, 448 So.2d 952 (Ala.1984), that when a hospital's patient sued the hospital because of injuries suffered during treatment, the commencement of the action made the information that had passed between physician and patient subject to discovery and, therefore, caused a waiver of any right of action by the patient against the physician for the physician's disclosure of such information to the hospital. Marsh maintains that Mull should be narrowly construed so as to limit its application to its facts, i.e., that it should be construed only to allow disclosure of information to the defendant. Marsh contends that to apply the rule in Mull to the facts present in her case, so as to allow samples of her tissue to come into the hands of Dr. Green's expert witness, would, without justification, destroy her privacy. For example, she argues, Dr. Green or the Laboratory could have conducted tests for the presence of diseases that would be potentially embarrassing, and that might be wholly unrelated to the subject matter of her action. We agree that such a result is not contemplated by the rule applied in Mull, but we note that such facts as she suggests are not presented here, and we conclude that the appropriate means of preventing such an abuse should be by way of a motion asking the trial court for an order governing any activities of a defendant occurring outside of formal discovery and involving information or tissues generated during the plaintiff's physician-patient relationship.
We also affirm the summary judgment as it relates to Marsh's claims against the Laboratory alleging breach of a fiduciary duty and breach of an implied contract.
AFFIRMED.
*991 HOOPER, C.J., and MADDOX, HOUSTON, and SEE, JJ., concur.
ALMON, SHORES, KENNEDY, and COOK, JJ., dissent.
COOK, Justice (dissenting).
I respectfully dissent. The majority holds that the trial court properly entered the summary judgment for the defendants, Dr. Wenzel and Pathology Laboratory Associates, P. A., on the basis of § 6-5-482, Ala.Code 1975. I disagree.
After Dr. Green performed the biopsy, he removed and forwarded tissue to be examined by Board-certified pathologist Dr. Wenzel, with Pathology Laboratory Associates. Dr. Wenzel reported that he found no tumor in the tissue he examined. Shortly thereafter, the plaintiff was diagnosed with cancer. On March 10, 1995, the plaintiff, acting pro se, instituted this action against Dr. Green, W. Rodgers Green, P.C., and certain fictitiously named parties. The plaintiff retained her present counsel six months after the initial filing of the lawsuit.
The dispositive issue presented on appeal is whether the trial court erred in holding that the plaintiffs claim alleging medical negligence does not relate back to the date of the original complaint and therefore is barred by the statute of limitations.
Dr. Green is a Board-certified surgeon with over 20 years' experience, and a major portion of his practice involves dealing with breast cancer. Dr. Green testified by deposition that he removed tissue from the plaintiff's breast and submitted the "entire specimen for microscopic examination." The affidavits of the plaintiff and her counsel establish that they believed and relied upon Dr. Green's sworn testimony indicating that there was no cancer in the tissue he removed. Subsequently, and to the plaintiff's surprise, Dr. Green contradicted his deposition testimony by amending his answers to interrogatoriesmore than four years after the initial malpractice is alleged to have occurredto state that the recuts of the tissue he removed on March 12, 1993, revealed that the tissue was cancerous. Consequently, the plaintiff arranged for the deposition testimony of the pathologist and moved for permission to amend her complaint to substitute the pathologist, Dr. Wenzel, and his group, Pathology Laboratory Associates.
It is undisputed that the identity of Dr. Wenzel and that of Pathology Laboratory Associates were known to the plaintiff and her attorney before the expiration of statutory limitations period. The defendants, relying on § 6-5-482(b), argue that the plaintiff's medical-negligence claims against Dr. Wenzel and Pathology Laboratory Associates are absolutely barred by this statute of repose because those claims were added "more than four years after the act, omission, or failure complained of." In Eddings v. Volkswagenwerk, A.G., 835 F.2d 1369, 1372 n. 2 (11th Cir.1988), the court wrote that "[a] statute of repose `... does not bar a cause of action; its effect, rather, is to prevent what might otherwise be a cause of action, from ever existing.'" (Quoting Rosenberg v. Town of North Bergen, 61 N.J. 190, 191, 293 A.2d 662, 667 (1972)). I agree with the Eleventh Circuit; thus, I feel that the doctrine of relation back is applicable in this case.
The plaintiff, in stating her claims against Dr. Wenzel and Pathology Laboratory Associates,is not proceeding on a new cause of action that she had not asserted before the expiration of the statutory limitations period. She is specifically identifying parties whose identities she was ignorant of when she filed her original complaint, but whom she described fictitiously in the body of her original complaint. When she filed her original complaint, the plaintiff did not know, and could not have determined through the exercise of reasonable diligence, that Dr. Wenzel was a party that should be sued. The plaintiff is now attempting to substitute Dr. Wenzel for a fictitiously named defendant against whom she stated a *992 cause of action in the original complaint. Consequently, the plaintiff has complied with the relation-back principles of Ala. R.Civ.P. 9(h) and 15(b), under which she must meet these criteria:
"(1) [T]he plaintiff must state a cause of action against the fictitiously named party in the body of the original complaint, and (2) the plaintiff must be ignorant of the identity of the fictitiously named party, in the sense of having no knowledge at the time of the filing that the later-named party was, in fact, the party intended to be sued."
Clay v. Walden Joint Venture, 611 So.2d 254, 255 (Ala.1992).
As to the issue whether when she filed her original complaint the plaintiff knew, or should have known, or was on notice, that the later-substituted defendants were in fact the parties described fictitiously, the plaintiff cites Dannelley v. Guarino, 472 So.2d 983 (Ala.1985). The plaintiffs in Dannelley were positioned as the plaintiff in this present case is: They knew the names of the defendants and the positions they held with the city at the time of the initial filing, but they were not aware when they filed their original complaint that the duties of the defendants might, under certain circumstances, involve safety inspection. Similarly, in Browning v. City of Gadsden, 359 So.2d 361 (Ala.1978), the plaintiff knew the true name of the city, but she did not know that the city was responsible for maintenance of the sidewalk on which she had been injured; thus she was "ignorant of the name of [the] opposing party," within the meaning of that phrase in Rule 9(h), Ala.R.Civ.P., the rule permitting designation of parties by fictitious names.
Marsh, the plaintiff in the instant case, attempted to determine who was responsible for her injuries, but the medical records provided by the pathologist, as well as the defendant surgeon's testimony, provided misinformation to her and her attorney. She argues that her case is not like Clay v. Walden Joint Venture, 611 So.2d 254, 255 (Ala.1992), because she had no actual or constructive knowledge of the pathologist's error. Dr. Wenzel had represented to the plaintiff that he had microscopically examined the entire specimen and had found the tissue to be benign.
The defendants also argue that the plaintiff did not exercise due diligence in learning the correct names of the fictitious parties. The defendants further argue that the plaintiff should not be afforded the benefit of relation-back principles to avoid the consequences of her failing to timely identify, and investigate the involvement of, Dr. Wenzel and Pathology Laboratory Associates, because, the defendants say, their identities were clearly documented in the plaintiff's medical records. Even if the plaintiff had known who Dr. Wenzel was, evidence did not exist before April 1997 that would form a basis for her to sue Dr. Wenzel. None of the slides that were in existence contained any cancer. Every expert who reviewed the slides and the recuts agreed with Dr. Wenzel's report. The plaintiff argues that, given these facts and given the prohibition against suing a health-care provider without substantial evidence, her counsel acted in a reasonably diligent manner and her amended complaint should relate back to the date she filed her original complaint.
Based on the foregoing, I would reverse the summary judgment for the defendants Dr. Wenzel and Pathology Laboratory Associates.
ALMON, J., concurs.
NOTES
[1] Marsh's claims against Dr. Green and his corporation remain pending and are not at issue in this appeal; those defendants are not appellees in this case.
[2] Marsh's amended complaint also added other defendants. Those defendants are not appellees in this case, and this appeal does not involve her claims against them.
[3] We note that Marsh has been represented by counsel since September 1995.