883 So.2d 185 (2003)
Annie PEARSON
v.
Glenn BROOKS and Michael Black.
1021494.
Supreme Court of Alabama.
December 5, 2003.
S. Mark Andrews of Morris, Cary, Andrews & Talmadge, LLC, Dothan, for appellant.
Peter A. McInish and William W. Nichols of Lee & McInish Attorneys, P.C., Dothan, for appellees.
LYONS, Justice.
Annie Pearson appeals from the trial court's order dismissing, on the basis of a statute-of-limitations defense, her complaint *186 against Glenn Brooks and Michael Black seeking damages for a job-related injury. We affirm.
Pearson was employed initially in the quality assurance and inspection department at Perdue Farms, Inc., a company operating a chicken-processing plant in Dothan. Subsequently, Pearson was transferred to the sanitation department; Brooks was the superintendent of the sanitation department, and Black was Pearson's immediate supervisor. Pearson was responsible for cleaning the "kill floor," where many of the machines used to prepare the chickens for sale and distribution were located. Pearson's cleaning routine required her to spray the machines with a high-pressure hose to remove the chicken remains. On November 17, 1999, while Pearson was cleaning the kill floor, she slipped in the chicken remains. In an attempt to break her fall, Pearson held her hands in front of her. Pearson fell into a "neck-skinning" machine, a machine that removed the skin from the chickens' necks. Pearson's right index finger was amputated when it became entangled in the machine. Apparently, the guard mechanism that would have prevented the blade of the machine from cutting was not in place at the time of Pearson's accident.
On October 17, 2001, one month before the statutory limitations period would have run on her claims, Pearson sued Perdue Farms, Inc.;[1] Kurt Andrews, the plant manager; Brian Hughes, the plant safety director; and several of her co-employees Mike Harp, Dave Jones, and Dennis Widgonswho were involved in the direct maintenance and supervision of the neck-skinning machine. Pearson did not name Brooks and Black, also co-employees, in the original complaint. The complaint alleged negligence and wantonness in the maintenance, repair, and upkeep of the neck-skinning machine, as well as the failure to ensure the safety of the machine. Pursuant to Rule 9(h), Ala. R. Civ. P., Pearson alleged claims against fictitiously named defendants who were either "that person, corporation or other legal entity who or which designed the machine, which is the subject matter of this lawsuit"; "that person, corporation, or other legal entity who had responsibility for maintenance or repair of the machine which is the subject matter of this lawsuit"; or "that person, corporation, or other legal entity whose negligence, wantonness, recklessness, willfulness or other wrongful conduct caused the injury to Plaintiffs [sic]."
Pearson began the discovery process with the named defendants. Pearson claims that at the August 20, 2002, deposition of Hughes she became privy to an accident investigation report related to her injury, which Hughes had prepared. Hughes stated in the report that Pearson's accident was caused by the "lack of control and supervision by the Sanitation Hourly Supervisor[ ] [Black] and Sanitation Superintendent [Brooks]." On August 30, 2002, Pearson amended her complaint to substitute Brooks and Black for two of the fictitiously named parties. Brooks and Black moved to dismiss Pearson's complaint, arguing that Pearson's claims against them were barred by the statute of limitations. The trial court granted the motion and dismissed Brooks and Black from the action. The trial court certified its order as final pursuant to Rule 54(b), Ala. R. Civ. P. Pearson appeals.
Pearson argues that her complaint was properly amended to add Brooks and Black as defendants pursuant to Rule 9(h), *187 which allows a plaintiff to designate opposing parties by using a fictitious name:
"When a party is ignorant of the name of an opposing party and so alleges in the party's pleading, the opposing party may be designated by any name, and when that party's true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name."
Further, Rule 15(c)(4), Ala. R. Civ. P., provides that "[a]n amendment of a pleading relates back to the original date of the pleading when ... relation back is permitted by principles applicable to fictitious party practice pursuant to Rule 9(h)." Pearson claims that Brooks and Black were properly named as fictitious parties because when she filed her original complaint, Pearson knew the names of the two men but she was not aware of any facts that would support a claim against them. She argues that her claims against Brooks and Black, therefore, relate back to the time of the commencement of the action, one month before the running of the applicable statutory limitations period. Brooks and Black argue that, based on her knowledge of their job titles and duties, Pearson was not ignorant of the name of an opposing party and was not excused from failing to sue Brooks and Black by their true names in the original complaint.
Based on the record before us, we conclude that Pearson could not have reasonably been ignorant of the identities of Brooks and Black. At her deposition, Pearson testified that she had known for over three or four years that Brooks was the superintendent of the sanitation department and that Brooks had personally trained her to clean the machines:
"Q. Tell me this. Tell me what you remember that Glenn [Brooks] trained you about?
"A. When he brought me in, he showed me how tohow to do the machinery, how to clean them and wash them down and everything like that....
"Q. And which machinery did he show you how to clean?
"A. I didIt was the bird wash and Let me see. It was two bird wash. Then it was twoThe other one I can't recall. It was two more and then it was the one, the neck skinner."
(Emphasis added.) Pearson also testified that Black was her immediate supervisor in the sanitation department and that he instructed the employees regarding the safety procedures in the plant:
"Q. I mean, you had safety meetings periodically when you were employed with Perdue [Farms]; is that correct?
"A. Yes. We have safety meetings.
"Q. And usually, those were conducted by the lead person or someone like Michael Black ...; is that correct?
"A. Correct.
"Q. And Michael Black was involved with plant safety ...; is that right?
"A. That's correct....
"Q. Now, we were talking about these safety meetings that you would attend as an employee at Perdue [Farms]. And do you remember specifically that you went to meetings with Michael Black where he was teaching employees like yourself about certain safety in the plant?
"A. Yes."
It is apparent from Pearson's testimony that she knew Brooks's and Black's identities as well as their duties regarding plant safety and the safe operation and cleaning *188 of the plant's machinery. These two men were also her department supervisor and her immediate supervisor. It would be unreasonable to believe that Pearson was ignorant of Brooks's and Black's identities as required to proceed under the fictitious-party practice allowed by Rule 9(h).
Pearson further argues that although she may have known Brooks's and Black's identities at the time she filed her complaint, she did not know that Brooks and Black were the parties that she intended to sue. Pearson cites Dannelley v. Guarino, 472 So.2d 983 (Ala.1985), as authority for this argument. In Dannelley, the plaintiff was injured when he fell out of an aerial bucket lift owned by the City of Mobile. The plaintiff and his wife sued the safety director for the City and several fictitiously named defendants. Subsequently, the plaintiffs learned that two other City employees were responsible for the testing and certification of the bucket lift, and they amended their complaint to substitute these individuals for the fictitiously named defendants. The two employees argued that the plaintiffs' claims did not relate back to the original filing date of the complaint because, they said, the plaintiffs were not ignorant of their identities. This Court held that "the record [was] devoid of any factual allegations which would indicate that the plaintiffs ... had knowledge of any facts concerning [the employees'] possible involvement in their personal injury." 472 So.2d at 986. Specifically, this Court stated that although the plaintiffs knew the two employees' names and their job titles, that information would not have placed the plaintiffs on notice that those two employees had anything to do with the safety of City equipment.
Pearson's factual situation, however, is not analogous to the situation in Dannelley. Pearson acknowledges that she was aware of Brooks's role in teaching employees how to properly clean the plant's machinery and of Black's role in instructing employees on safety procedures within the department. Therefore, Pearson knew more than Brooks's and Black's names and job titles; she had firsthand knowledge of their duties in the sanitation department and as to plant safety and how those duties would relate to her injury at the plant. Furthermore, Pearson's claim that she knew that the plant manager and the plant safety manager, whom she named as defendants, were involved in her injury, but that she did not know that the supervisors in her department had any role in her safety at the plant, in face of her deposition testimony about their duties involving training and safety, strains credulity.
Pearson's case is more analogous to Marsh v. Wenzel, 732 So.2d 985 (Ala.1998). The plaintiff in Marsh sued her surgeon, who had removed tissue from her breast but had failed to diagnose it as cancerous. After she deposed the pathologist who had also examined the tissue and had failed to diagnose the cancer, the plaintiff substituted the pathologist for one of the fictitiously named defendants. This same pathologist was listed in the plaintiff's medical records, to which she had access before she filed her lawsuit. This Court held that the plaintiff's claims were time-barred because she could not have reasonably been ignorant of the pathologist's identity and her claims against the pathologist, therefore, did not relate back. Dannelley and Marsh both quote Columbia Engineering International, Ltd. v. Espey, 429 So.2d 955, 960 (Ala.1983), which "re-emphasize[d] ... that Rule 9(h) was not meant to excuse ignorance of the identity of a cause of action, but only ignorance of the name of the party against whom a cause of action is stated." Moreover, in Marsh, we interpreted Dannelley as standing only for the proposition that "one's ignorance of the existence of a relationship that could give *189 rise to a duty is subsumed by the concept of `ignorance of identity.'" 732 So.2d at 989. Pearson's clear description of the personal training in cleaning the machines she received from Brooks and the safety instruction she received from Black establishes that she was aware of a special relationship that existed between her and her supervisors. Furthermore, Pearson's knowledge of Brooks's and Black's duties and authority counters any argument that Pearson did not know that the two owed her a duty regarding the safety and the maintenance of the neck-skinning machine.
Pearson attempts to distinguish Marsh on the basis that Marsh involved a medical-malpractice action. Pearson argues that her case is unlike a medical-malpractice action because a plaintiff in a medical-malpractice action is able obtain a complete set of medical records before the expiration of the limitations period. The definition of ignorance under Rule 9(h), however, is not stated in terms that would restrict it to medical-malpractice cases. If we limited Marsh to medical-malpractice actions, as Pearson's interpretation suggests we should, we would contradict the holding in Columbia Engineering, a negligence action against a construction company, the manufacturer of a scaffold, and fellow employees, that "Rule 9(h) was not meant to excuse ignorance of the identity of a cause of action, but only ignorance of the name of the party against whom a cause of action is stated." 429 So.2d at 960. Therefore, to gain the protection of Rule 9(h), Pearson must show that she was ignorant of the existence of a relationship between her and her supervisors that might give rise to a duty on their part.
Pearson compares her case to Alexander v. Scott, 529 So.2d 951 (Ala.1988), in which the plaintiff claimed that she was ignorant of the existence of a relationship between her and two executives at her employer's company. Explaining why it was appropriate for her to substitute the executives for fictitiously named parties, the plaintiff in Alexander stated in her affidavit in opposition to the defendants' motion for a summary judgment:
"`2. At the time of my injury, I knew Mr. Gerald Cannon and Mr. Mike Scott by name. I knew that Mike Scott was an employee of Dexter Lock, but I did not know his title, his job description or any of his duties. I did not have knowledge of any facts which would give me cause to think or suspect that Mike Scott owed me a personal duty upon which liability could be predicated.
"`3. At the time of my injury, I knew that Gerald Cannon held a high managerial position with Dexter Lock. This is all I knew of Mr. Cannon's job or position. I did not know his job title, his job description, or any of his duties or responsibilities with Dexter Lock other than that he had a high managerial position.'"
Alexander, 529 So.2d at 953 (emphasis added). In contrast to the plaintiff in Alexander, Pearson knew more than merely Brooks's and Black's names. As previously noted, Pearson knew that Brooks was superintendent of the sanitation department, and she also knew that Brooks would train people in properly cleaning the machines in the plant. Pearson knew that Black was her immediate supervisor in the sanitation department and that he was responsible for certain aspects of plant safety. Therefore, Pearson cannot claim that she was ignorant of any facts that would lead her to believe that she had a cause of action against Brooks and Black, as was the case with the plaintiff in Alexander.
Pearson attempted to minimize her knowledge of Brooks's and Black's identities in an affidavit sworn to on November 1, 2002. In the affidavit, Pearson asserts:

*190 "As a result of the deposition of Mr. Hughes, I learned for the first time that the cause of my accident was the misconduct of Mr. Glenn Brooks and Mr. Michael Black as determined by Mr. Brian Hughes. I also learned for the first time as a result of Mr. Hughes deposition:
"(1) that, as a result of Mr. Hughes' Accident Investigation, it was determined that Glenn Brooks and Michael Black were the individuals responsible for locking out and tagging out the machine on which I was injured;
"(2) that it was determined by Mr. Hughes that Glenn Brooks and Michael Black failed to follow sanitation standard operating procedure when they failed to lock out and tag out the machine on which I was injured, and that as a direct result, I suffered injuries;
"(3) that Glenn Brooks and Michael Black were found to have improperly supervised and trained me and my associates in sanitation on the kill floor where I was injured as to the proper method and standard operating procedures on locking out and tagging out;
"(4) that Glenn Brooks and Michael Black were disciplined and/or received citations as a result of their willful misconduct in causing my accident."
Pearson's affidavit does not address her inability to identify either Brooks or Black and her ignorance of the existence of a relationship that could give rise to a duty; rather, it addresses her ability to gather additional evidence to substantiate her claims against Brooks and Black. Pearson's deposition testimony on August 20, 2002, indicated that she was quite familiar with Brooks and Black and their duties and responsibilities at Perdue Farms.[2] The affidavit does not contradict Pearson's knowledge of the existence of a relationship that could give rise to a duty, and, while the affidavit does not in that respect contradict her deposition, it does not avoid the consequences of the rule in Marsh where, as previously noted, we defined ignorance under Rule 9(h) as "ignorance of the existence of a relationship that could give rise to a duty." 732 So.2d at 989.
Pearson also relies upon Roberts v. Cochran, 656 So.2d 353 (Ala.1995). Roberts, a passenger in Cochran's car, was injured when Cochran's car was struck from behind. During the discovery process, Roberts became aware that Cochran applied her emergency brake and not her regular brakes when she tried to stop her car. Thereafter, Roberts amended her complaint to substitute Cochran for one of the fictitiously named parties. Cochran argued that Roberts's claim against her was untimely. This Court held that although Roberts was aware that Cochran owed her a duty to operate the vehicle so as not to wantonly or willfully injure Roberts, she was still permitted to amend her complaint under Rule 9(h) because Roberts did not know that Cochran had misapplied the brakes until after the complaint was filed. Therefore, the Court stated:
"Roberts had no information [before the deposition] that would have indicated that she had a cause of action against Cochran, and it is the public policy of *191 the state that civil actions are not to be commenced without `substantial justification.' See Ala.Code 1975, § 12-19-270 et seq. (`The Alabama Litigation Accountability Act'), which sets forth certain penalties to be assessed against attorneys and/or parties who file civil claims that lack `substantial justification,' i.e., that are `frivolous, groundless in fact or in law, or vexatious, or interposed for any improper purpose, including without limitation, to cause unnecessary delay or needless increase in the cost of litigation.'"
656 So.2d at 355.
Roberts cannot be reconciled with this Court's earlier holding in Columbia Engineering and our later holding in Marsh involving the same issue. Columbia Engineering held that the purpose of Rule 9(h) is not to toll the statutory period of limitations to give plaintiffs more time to formulate a cause of action, but to extend the time in emergency situations where the plaintiff knows he has been injured and has a cause of action against some person or company, but cannot determine through due diligence the party's name. 429 So.2d at 959. This Court refused to create a special exception to Rule 9(h) that would allow a plaintiff to wait until the discovery process to ascertain possible defendants, stating as follows:
"Indeed such an interpretation would amount to nothing less than the creation of a `discovery' exception to the statute of limitations. Additionally, the argument in favor of such an interpretation would support a tolling of the statute until discovery of the cause of action, rather than the classical tolling until discovery of injury which is generally contemplated by our discovery statutes."
429 So.2d at 959. The interpretation of Rule 9(h) in Roberts excuses the plaintiff from using due diligence to ascertain the identity of a defendant, contrary to the requirements of other cases construing Rule 9(h). See Crowl v. Kayo Oil Co., 848 So.2d 930, 937 (Ala.2002), quoting Fulmer v. Clark, 654 So.2d 45, 46 (Ala.1995), as follows:
"`Rule 9(h) and Rule 15(c), Ala. R. Civ. P., allow a plaintiff to avoid the bar of a statute of limitations by fictitiously naming defendants for which actual parties can later be substituted. Such a substitution is allowed to relate back to the date of the original complaint if the original complaint adequately described the fictitiously named defendant and stated a claim against such a defendant. In order for the substitution to relate back, the plaintiff must have been ignorant of the true identity of the defendant and must have used due diligence in attempting to discover it. Jones v. Resorcon, Inc., 604 So.2d 370 (Ala.1992).'"
(Emphasis added.) Furthermore, the holding in Roberts promotes the use of fictitiously named parties in a case where the identity of the defendant is known but the plaintiff has not quite built a winning case against the defendant. That particular use of Rule 9(h) is contrary to Marsh and Columbia Engineering, and it is exactly the use advocated by Pearson in this case. Pearson knew the identities of Brooks and Black and the duties that they performed at Perdue Farms. It would extend the statute of limitations without authorization from the Legislature to allow Pearson to substitute Brooks and Black for fictitiously named parties because Pearson has now obtained evidence that Brooks and Black have been described as the parties responsible for the accident.
Pearson cannot substitute Brooks and Black after the expiration of the statutory limitations period because under Marsh and Columbia Engineering Pearson was not ignorant of their identities at the time *192 she filed her original complaint. We hereby overrule Roberts to the extent that it conflicts with the rule established in Columbia Engineering and followed in Marsh regarding the substitution of fictitiously named parties and the doctrine of relation back. Therefore, we affirm the order of the trial court dismissing Brooks and Black from the action.
AFFIRMED.
SEE, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
HOUSTON, J., concurs specially.
HOUSTON, Justice (concurring specially).
When I authored Roberts v. Cochran, 656 So.2d 353 (Ala.1995), I was trying to tie the 1987 Alabama Litigation Accountability Act (Ala.Code 1975, §§ 12-19-270 to -276) to this Court's existing Rules of Civil Procedure. If Justice Lyons, the moving force behind the Alabama Rules of Civil Procedure, deems my effort too much of a stretch, I will not disagree. I do recommend that the Standing Committee on Alabama Rules of Civil Procedure consider adopting a rule that would give an attorney or party some relief when the attorney or party, using reasonable diligence, could not discover that the attorney or party had substantial justification for filing a claim against a party or "that person, corporation, or other legal entity whose negligence, wantonness, recklessness, willfulness or other wrongful conduct caused the injury to the Plaintiffs," until after the statutory period of limitations on that claim had run.
NOTES
[1] Perdue Farms, Inc., was dismissed from this case pursuant to the exclusivity-of-remedies provision in the Worker's Compensation Act. § 25-5-53, Ala.Code 1975.
[2] Brooks and Black filed a motion to strike Pearson's November 1, 2002, affidavit because, they argued, it was inconsistent with her previous deposition testimony. Pearson responded to the motion by arguing that her affidavit should stand because it was similar to the affidavit given by the plaintiff in Alexander. The trial court never ruled on the motion.