BOLIN, Justice.
Phil Bowman petitions this Court for a writ of mandamus directing the trial court to dismiss Clarence Heard’s and Janice Heard’s claims against him. At the outset, we note that this is a companion case to Ex parte Atkinson, 976 So.2d 1001 (Ala.2007).

Facts and Procedural History

The pertinent facts in this case, as set forth in Ex parte Atkinson, are as follows:
“Clarence Heard claims he was injured on November 23, 2002, in an accident involving a positive flow continuous fermenter manufactured by APV North America, Inc. (‘the APV tank’), while he was employed by Ventura Foods, L.L.C. On November 22, 2004, Heard and his wife, Janice, sued APV North America and others, including several fictitiously named defendants, claiming that Clarence’s injury was caused by the negligence of the defendants in designing, manufacturing, and installing the APV tank.”
976 So.2d at 1002. The Heards amended their complaint in February 2006, after the statute of limitations had run, substituting Dwayne Atkinson for one of the fictitiously named defendants, claiming that Atkinson was one of the employees or supervisors who had negligently installed the APV tank. Atkinson filed a motion asking to be dismissed because, he said, the statute of limitations on the Heards’ claims had run before the Heards named him as a defendant. Atkinson offered as evidence Clarence’s deposition, which established that Clarence knew who Atkinson was before the Heards filed their original complaint or that he could have discovered Atkinson’s true identity at that time with due dili *1154 gence. Atkinson presented evidence indicating that Clarence knew that someone with a name similar to Atkinson’s worked as a supervisor and that he could have learned Atkinson’s true identity by exercising due diligence before the statute of limitations expired. The trial court denied the motion, and Atkinson appealed. This Court held that the Heards’ amended complaint substituting Atkinson for a fictitiously named defendant did not relate back to the timely filing of the original complaint against the manufacturer of the APV tank. Accordingly, we granted Atkinson’s petition for a writ of mandamus and ordered the trial court to dismiss Atkinson as defendant.
Relevant to this case, the Heards, on October 18, 2006, filed a motion to amend their complaint, to substitute Bowman for one of the fictitiously named defendants, claiming that Bowman was the quality-assurance manager at Ventura Foods, L.L.C., when Clarence was injured and that Bowman had found the APV tank at a used-equipment dealer and had participated in the placement of the tank as well as in making certain modifications to the tank. As grounds for the motion, the Heards claimed that it was not until the deposition of Ralph Freda, the Ventura Foods corporate representative, was taken on September 12, 2006, that Bowman’s role in purchasing and/or installing the APV tank became known to them. Freda testified that Bowman had located the APV tank at a used-equipment dealer and that Bowman had participated in deciding where to place the APV tank in the production facility. Additionally, Freda testified that Bowman requested that certain internal agitator blades be removed from the APV tank.
The trial court granted the motion, and on November 16, 2006, the Heards amended their complaint to substitute Bowman as one of the fictitiously named defendants because, they asserted, Bowman was one of the employees of Ventura Foods who was “assigned/or assumed responsibilities for the safe operation and routine maintenance of the machinery located at ... Ventura Foods.” They asserted a claim pursuant to § 25 — 5—11(c), Ala.Code 1975, alleging that Bowman’s intentional and willful conduct in removing or failing to install a safety device had proximately caused Clarence’s injuries.
Bowman filed a motion to dismiss or, in the alternative, for a summary judgment, arguing that the Heards’ claims against him were barred by the applicable statute of limitations because, he argued, he could not now be substituted as a one of the fictitiously named defendants. In support of his motion, Bowman presented the following testimony from Clarence’s deposition given on December 6, 2005, describing his injury, which had occurred while he was taking a sample from the APV tank:
“Q. Did someone tell you why a sample was needed?
“A. Yes.
“Q. Who told you why a sample was needed?
“A. Phil Bowman.
“Q. And did this person tell you why you needed to get a sample?
“A. Yes.
“Q. Or why a sample was needed?
“A. Yes. Needed a sample in order to make sure the product was ready to run.”
“Q. On the several hundred occasions or more, Mr. Heard, when you used a sample bowl to take a sample out of the stehling tank, before you climbed up on the ladder to take the sample, did you *1155 ever push the red button to turn off the machine?
“A. No.
“Q. Why not?
“A. That wasn’t' — that wasn’t the process. The process is to leave it turning to get a sample — while you are getting a sample.
“Q. Who told you that?
“A. Well, that’s [the] process. Phil Bowman said that it sweeps 24 hours.
“Q. Did you say it had to sweep for 24 hours?
“A. Yes.
“Q. What do you mean by that, Mr. Heard?
“A. That the — let it process, to let it mix for 24 hours.
“Q. So it was your understanding that the product that was in the stehling tank had to mix for 24 hours?
“A. Yes.
“Q. Did someone tell you that if you turned off the machine in order to get a sample, that that would affect the product?
“A. No. No one didn’t tell me to leave it on. It just makes the product better, so.
“Q. No one told you that; that’s just what your belief was?
“A. No. That wasn’t my belief. That’s what he told me. He told me to let it sweep for 24 hours. He didn’t say anything about cutting it off.
“Q. All right.
“A. Yes.
“Q. Who is‘he’?
“A. Phil Bowman. I just gave you that name.
“Q. Did you say Bowman?
“A. Yeah.
“Q. And what was the name?
“A. Phil
“Q. Phil?
“A. Uh-huh.”
“Q. Have you ever seen anybody either from — either your supervisors or from the — what do /all call it? — quality control people, any of those people ever take samples? You ever seen them do that?
“A. Yeah, I’ve seen them.
“Q. Who is that?
“A. Pbil Bowman.
“Q. Phil Bowman?
“A. Yes.
“Q. Is he the quality control guy?
“A. Yes.”
Bowman argued that Clarence’s testimony showed that Clarence was aware of Bowman’s name and Bowman’s general duties as the “quality control guy” at the time the Heards filed their original complaint. Bowman also argued that the testimony that the Heards relied upon to substitute Bowman as one of the fictitiously named defendants was Freda’s testimony related to the purchase and installation of the APV tank in the factory, which was not related to the Heards’ claim against Bowman regarding his alleged removal or failure to install a safety device.
Bowman also presented deposition testimony from Chris Burnett, a co-employee, given in December 2005. In that testimony Burnett identified Bowman as the person “involved either directly or indirectly with the purchase [of the APV tank].” Bowman argued that Burnett’s testimony clearly revealed that Bowman had been involved with the purchase of the APV tank and that the Heards had Burnett’s testimony 11 months before they attempted to substitute Bowman on the basis that *1156 he was involved in purchasing the APV tank.
The trial court denied the motion. Bowman petitions this Court for a writ of mandamus directing the trial court to dismiss him as a defendant.

Standard of Review

“This Court’s standard of review applicable to a petition for a writ of mandamus is well settled:
“ ‘ “Mandamus is an extraordinary-remedy and requires a showing that there is ‘(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ ” ’ ”
Ex parte Medical Assurance Co., 862 So.2d 645, 649 (Ala.2003) (quoting Ex parte Inverness Constr. Co., 775 So.2d 153, 156 (Ala.2000)). The question whether a plaintiff failed to act with due diligence in identifying a fictitiously named defendant as the party the plaintiff intended to sue is reviewable by a petition for a writ of mandamus. See Ex parte Snow, 764 So.2d 531 (Ala.1999).

Analysis

As this Court stated in Ex parte Atkinson, 976 So.2d at 1003:
“Rule 9(h), Ala. R. Civ. P., provides: “ ‘When a party is ignorant of the name of an opposing party and so alleges in the party’s pleading, the opposing party may be designated by any name, and when that party’s true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name.’
“This Court has stated on numerous occasions that in order to invoke the relation-back principles of Rule 9(h), that is, in order for the amended complaint with the defendant’s true name to relate back to the original complaint with the fictitious name, the plaintiff must establish (1) that the plaintiff was ignorant of the identity of the fictitiously named party, in the sense of having no knowledge at the time the complaint was filed that the party subsequently named was in fact the party intended to be sued, Columbia Engineering International, Ltd. v. Espey, 429 So.2d 955 (Ala.1983); and (2) that the plaintiff used due diligence to discover the defendant’s true identity before filing the original complaint, Fulmer v. Clark Equipment Co., 654 So.2d 45 (Ala.1995).”
Bowman argues that Pearson v. Brooks, 883 So.2d 185 (Ala.2003), supports his position that the Heards’ amended complaint does not relate back to the Heards’ original complaint. In Pearson, the plaintiff sought damages for an injury she suffered after becoming caught in a “neck-skinning” machine in the chicken-processing plant where she worked. She alleged that the guarding mechanism was not properly in place on the machine, and she filed a complaint naming as defendants several co-employees. Two of the co-employees, Glenn Brooks and Michael Black, were not named in the original complaint but were added as defendants approximately nine months after the statute of limitations had expired. The plaintiff claimed that while she knew of Brooks’s and Black’s names at the time she filed her complaint, she was not aware of any facts to support a claim against them. However, Brooks and Black presented evidence indicating that she also knew their titles and job duties when she filed her complaint. Brooks and Black argued that the plaintiffs attempt to relate the claims against them back to the filing of the original complaint pursuant to Rule 9(h), Ala. R. Civ. P., must fail. This Court stated:
*1157 “Based on the record before us, we conclude that [the plaintiff] could not have reasonably been ignorant of the identities of Brooks and Black. At her deposition, [the plaintiff] testified that she had known for over three or four years that Brooks was the superintendent of the sanitation department and that Brooks had personally trained her to clean the machines.
[[Image here]]
.. [The plaintiff] also testified that Black was her immediate supervisor in the sanitation department and that he instructed the employees regarding the safety procedures in the plant.
[[Image here]]
“It is apparent from [the plaintiffs] testimony that she knew Brooks’s and Black’s identities as well as their duties regarding plant safety and the safe operation and cleaning of the plant’s machinery. These two men were also her department supervisor and her immediate supervisor. It would be unreasonable to believe that [the plaintiff] was ignorant of Brooks’s and Black’s identities as required to proceed under the fictitious-party practice allowed by Rule 9(h).”
883 So.2d at 187-88. “[T]o gain the protection of Rule 9(h), [the plaintiff] must show that she was ignorant of the existence of a relationship between her and her supervisors that might give rise to a duty on their part.” Pearson, 883 So.2d at 189.
With regard to Bowman’s role as quality-assurance manager, Bowman did establish that the Heards were not ignorant of Bowman’s existence or identity at the time of Clarence’s injury or on the date the Heards filed their complaint. Clarence knew that Bowman was in charge of quality control and that he was responsible for ensuring that the product produced in the APV tank met all applicable standards. He also knew that Bowman had instructed him to take the sample from the APV tank without first turning the machine off. Clarence was obtaining a sample from the machine when he was injured. In accordance with the “process” established by Bowman for testing the product, Clarence did not turn the machine off before obtaining a sample. However, the Heards’ claim against Bowman is that, as one of the employees allegedly assigned or assuming the responsibility for the safe operation of machinery, Bowman removed or failed to install a safety device on the machine. The fact that Clarence knew that Bowman was in charge of quality control is not related to the Heards’ claim. There is no logical and necessary linkage between knowledge that an individual had responsibility for the quality of the product produced and knowledge that such individual was a participant in acquiring, installing, and modifying the machine that makes the product. Accordingly, Bowman has failed to show that he is entitled to mandamus relief on the ground that Clarence knew that Bowman was in charge of quality control.[1]
We now turn to whether the 11-month delay between the time the Heards learned that Bowman was involved in purchasing the APV tank and the time the *1158 Heards amended their complaint to substitute Bowman is a basis for mandamus relief. This Court has recognized that delay in amending a complaint to substitute a named party for a fictitiously named party once information is available can defeat the availability of the doctrine of relation back. See Denney v. Serio, 446 So.2d 7, 11 (Ala.1984) (“Although this Court has refused to apply the relation-back principle to inordinate delays from the time of knowledge of the fictitious party’s true identity until actual substitution of the fictitious party’s true name — see Walden v. Mineral Equipment Co., 406 So.2d 385 (Ala.1981)(three-year delay too long); Shirley v. Getty Oil Co., 367 So.2d 1388 (Ala.1979)(17-month delay too long) — Dr. Seño proffered no evidence establishing that Denney’s dilatory substitution in fact prejudiced him. See generally Ex parte Tidmore, 418 So.2d 866 (Ala.1982)(two-year delay in substituting proper defendant too long where party sought to be added would be prejudiced thereby).” (emphasis added)).
Bowman did not assert in his motion to dismiss filed in the trial court prejudice as justification for not allowing the amended complaint to relate back to the filing of the original complaint. Before this Court, Bowman simply argues that if a showing of prejudice is necessary, that showing has been met. Bowman has failed to show that he is entitled to mandamus relief on the ground of delay in substituting him for a fictitiously named defendant.
Accordingly, Bowman’s petition for a writ of mandamus is denied.
PETITION DENIED.
COBB, C.J., and SEE, LYONS, WOODALL, STUART, SMITH, PARKER, and MURDOCK, JJ., concur.

. Bowman raises an issue concerning the sufficiency of the allegations of the Heards' amended complaint, i.e., that Bowman's purchase and installation of the APV tank in the factory have nothing to do with the Heards' claim that Clarence's injuries were proximately caused by the removal or failure to install a safety device. This issue is not before the Court in Bowman's mandamus petition regarding substitution of a fictitiously named defendant and should be the subject of further proceedings dealing with the merits of the amended complaint.